# EXHIBIT "A"

Case 8:24-cv-02006-DOC-ADS    Document 1-2    Filed 09/18/24    Page 2 of 71    Page ID
Electronically Filed by Superior Court of California, County of Orange, 07/29/2024 08:00:00 AM.
30-2024-01414656-CU-BC-NJC - ROA # 9 - DAVID H. YAMASAKI, Clerk of the Court By A. Burton, Deputy Clerk.

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**
Shawn Harju aka SHAWN HARJU, an individual;
Chrysalis Solutions PLLC, a Washington Professional
Limited Liability Company; and DOES 1 through 25
inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**
Belmont Asset Solutions, LLC,
a Wyoming Limited Liability
Company; Chad Ullery, an
individual

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is:<br>(El nombre y dirección de la corte es):<br>Superior Court of California, County of Orange<br>700 Civic Center Drive, Santa Ana, CA 92701 | CASE NUMBER: (Número del Caso):<br>30-2024-01414656-CU-BC-NJC |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: (El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Alessandro Assanti, 9841 Irvine Center Dr., Suite 100 Irvine, CA. 92618; 949-540-0439

| DATE: Donna Etemadi, 137 Pineview Irvine, CA 92620, 323-688-0616 | Clerk, by | , Deputy |
|---|---|---|
| (Fecha)  07/27/24 | (Secretario) | (Adjunto) |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

    under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
           ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courts.ca.gov |

Electronically Filed by Superior Court of California, County of Orange, 07/22/2024 03:10:06 PM.
30-2024-01414656-CU-BC-NJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By S. Berry, Deputy Clerk.
Case 8:24-cv-02108-DOC-DFM Document 1-2 Filed 09/26/24 Page 3 of 71 Page ID
#:14

Alessandro G. Assanti, Esq. (SBN 181368)
A.G. ASSANTI & ASSOCIATE, P.C.
9841 Irvine Center Dr., Suite 100
Irvine, CA. 92618
v: 949-540-0439;  f: 949-540-0458
email: aassanti@assantilaw.com
email: litigation@assantilaw.com

Donna Etemadi, Esq. (SBN 354563)
Etemadi Legal Group PC
137 Pineview
Irvine, CA 92620
v: (323)688-0616
email: donna@elglaw.co

Attorneys for Plaintiffs Chad Ullery and Belmont Asset Solutions, LLC

## SUPERIOR COURT FOR THE STATE CALIFORNIA
## IN AND FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER
NORTH  *sb*

| | |
|---|---|
| BELMONT ASSET SOLUTIONS, LLC, a Wyoming Limited Liability Company, and CHAD ULLERY, an individual,<br><br>        Plaintiffs,<br><br>vs.<br><br>SHAWN K. HARJU aka SHAWN HARJU, an individual; CHRYSALIS SOLUTIONS PLLC, a Washington Professional Limited Liability Company; and DOES 1 through 25 inclusive,<br><br>        Defendants. | Case No.: 30-2024-01414656-CU-BC-NJC<br>**Assigned for All Purposes**<br>Judge Donald F. Gaffney<br>COMPLAINT FOR:<br>1.     **BREACH OF WRITTEN CONTRACT;**<br>2.     **NEGLIGENCE;**<br>3.     **FRAUD;**<br>4.     **CONSTRUCTIVE FRAUD;**<br>4.     **CONVERSION;**<br>5.     **FRAUDULENT TRANSFER;**<br>6.     **CONSTRUCTIVE FRAUDULENT TRANSFER;**<br>7.     **QUIET TITLE;**<br>8.     **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**<br>9.     **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**<br>10.    **ACCOUNTING;**<br>11.    **CONSTRUCTIVE TRUST;**<br>12.    **THEFT (VIOLATION OF WASH. REV. CODE §9A.56.070);**<br>13.    **TRAFFICKING IN STOLEN** |

1

PROPERTY (VIOLTION OF WASH. REV. CODE §9A.56.070);
14.     FEDERAL WIRE FRAUD (VIOLATION OF 18 U.S.C. § 1343);
15. UNFAIR AND DECEPTIVE TRADE PRACTICES;
16.     CIVIL CONSPIRACY;
17.     BREACH OF BAILMENT; AND
18.     DECLARATORY RELIEF.

DEMAND FOR JURY TRIAL

## GENERAL ALLEGATIONS

1.     Plaintiff, CHAD ULLERY, (hereinafter referred to as "Plaintiff" or "ULLERY") is an individual residing in the county of Orange, State of California.

2.     Plaintiff, BELMONT ASSET SOLUTIONS, LLC, (hereinafter referred to as "Plaintiff" or "BELMONT") is a Wyoming corporation in good standing and qualified to conduct business in the State of California, with its principal offices located in County of Orange, State of California.

3.     At all times, ULLERY and BELMONT are collectively referred to as "Plaintiffs."

4.     At the time of the subject incident (hereinafter described below), which gave rise to this complaint, any and all the acts committed upon Plaintiffs occurred within the city of Irvine, County of Orange, California.

5.     Plaintiffs based on information and belief allege that Defendant SHAWN K. HARJU aka SHAWN HARJU (hereinafter " Defendant Shawn Harju") is an individual and resident of the State of Washington, is the sole shareholder of Defendant CHRYSALIS SOLUTIONS PLLC (hereinafter "Chrysalis Solutions") and believed to be a principal of Defendant Defenders Northwest. Defendant Shawn Harju jointly with other individuals committed the acts against Plaintiffs as herein complained of.

2

6.    The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein as DOES 1 to 25 hereinafter also referred to as the "Fictitiously Named Defendants", are currently unknown to Plaintiffs who, therefore, sue said Defendants by such fictitious names.  Plaintiffs are informed and believe, and based upon such information and belief allege, that each of the Fictitiously Named Defendants are responsible to Plaintiffs in some manner for the acts, omissions, or other conduct as hereinafter alleged, or each such defendant is a necessary party for the relief sought herein and is subject to the jurisdiction of this Court; and further the Fictitiously Named Defendants are being sued in both their individual and official capacity.  Plaintiffs will seek leave of Court to amend this Complaint to allege each of their true names and capacities when same have been ascertained.

7.    Each reference to "Defendant" or "Defendants", herein is intended to be a reference to all Defendants named herein, unless otherwise expressly indicated or the context otherwise requires.

8.    Plaintiffs are informed and believe, and based upon such information and belief allege, that at all times herein relevant, each of the Defendant was and is the principal, agent, representative, supervisor, employee, servant, alter ego, partner, shareholder, director, officer, joint venturer, parent corporation, subsidiary corporation, co-conspirator, licensor, licensee, inviter, invitee, predecessor-in-interest, successor-in-interest, assignor and/or assignee (hereinafter referred to as an "Interrelationship"), as may be applicable, of each the other Defendants, and, in doing the things hereinafter alleged, was (a) acting in concert with all of the other Defendants; (b) under the direction, instruction, demand, requirement, and/or control of some or all of the other Defendants; (c) in furtherance of a common plan, scheme, enterprise and/or control of some or all of the other Defendants; (d) in furtherance of a common plan, scheme, enterprise and/or conspiracy

3

with some or all of the Defendants; and/or (e) with the knowledge, consent, acquiescence, and/or prior or subsequent ratification of some or all of the other Defendants.

9.      Plaintiffs further allege that each of said Defendants proximately caused the injuries and damages by reason of negligent, careless, deliberately indifferent, intentional, willful or wanton misconduct, including the negligent, careless, deliberately indifferent, intentional, willful or wanton misconduct in creating and otherwise causing the incidents, conditions and circumstances hereinafter set forth, or by reason of the direct or imputed negligence or vicarious fault or breach of duty arising out of the matters herein alleged.

10.     Plaintiffs herein allege on information and belief that Brian Hall, Michele Hall, and Defenders Northwest LLC (hereinafter referred to as "Defenders Northwest") entered into a written agreement with Plaintiffs and Plaintiffs' representatives to restore a 1984 Land Rover Defender vehicle occasionally referred to by its model reference as "Defender 130" (hereinafter the "Vehicle"), which, upon execution of said agreement, was promptly delivered to Defenders Northwest's restoration shop in Gig Harbor, Washington, in February 2015.  A true and correct copy of the subject Agreement and initial work order/invoice is attached hereto and incorporated by reference as "**Exhibit 1**".  As part of the Agreement, the parties have agreed that in the event that a dispute arises out of the Agreement, that the dispute shall be resolved in the State of California, County of Orange.

11.     Defenders Northwest and its owners claim through their website (www.defendersnorthwest.com and www.defendersnw.com) and through various industry automotive forums, social media and chat room posts (i.e. Instagram, LinkedIn, X, Meta, etc.) that they operate a Land Rover parts sales and restoration business and sell ancillary camping equipment and gear, and source and broker mostly vintage Land Rover parts and accessories in

4

U.S. and worldwide.  Specifically, they allege that Defenders Northwest is a restoration parts supplier "for the ever-growing community of Defender owners and enthusiasts in the USA." They further claim that in Gig Harbor, Washington they "import and stock a full selection of parts, supplies, and tools to support the restoration, enhancement, and maintenance of the Defender platform.  From simple service parts like oil-filters, to full restoration foundation items like replacement chassis…," They claim that they stock only parts for the Defender 90, 110, and 130," and accessories such as roof racks and safari-type tools, including safari sleeping tents/systems under the brand AutoHome USA.  They claim that they perform limited repair and fabrication projects in-house as production schedules permit, specializing in 300Tdi powered Defender 110 frame-off restorations for expedition, recreation, or daily-use.  The Plaintiffs allege that recently the majority of Defenders Northwest's business is predicated on illegal modifications to bypass U.S. and state import restrictions and overcharging customers for parts, restoration projects, and vehicle storage, and filing of fraudulent insurance claims and police reports.  Plaintiffs fell victims to Defenders Northwest's, its owners, and Defendants' scheme, relying on a pitch to restore the Vehicle in a few months and the curated social media campaign designed to lure in new "clients" that all parties involved aim to defraud.

12.     Plaintiffs further allege on information and belief that Defenders Northwest and its owners never intended to complete the restoration project of the Vehicle.  Rather, they, each of them and including Defendants, acting in coordination and unison intended to defraud Plaintiffs. To that end, Defenders Northwest and its owners from approximately February 2015 through 2018 electronically (via email) sent Plaintiffs fraudulent invoices for auto parts to be installed and for labor and miscellaneous expenses (i.e., import duties, shipping, freight, etc.). Unfortunately, they never acquired the invoiced parts and did not perform any material work on the Vehicle as they

represented to the Plaintiffs.  Moreover, they stripped and sold the existing parts (some of which were obtained through sponsorship from unwitting vendors) and then decided to hold the vehicle hostage unless additional unsubstantiated payments would be made. Ultimately, Plaintiffs believe that Defenders Northwest, its owners, and Defendants illegally sold the  Vehicle.

13.     Defenders Northwest's owner Brian Hall began to come up with numerous made-up arguments and outrageous lies to explain delays in completion to perpetuate the fraudulent scheme.  These fake excuses included two staged incidents of burglary and vandalism.  In both instances Defenders Northwest and its owners filed false police reports and fraudulent insurance claims to defraud their insurance company and create additional delays – pushing back the inevitable truth that they shamelessly defrauded Plaintiffs.  Additionally, they alleged that COVID-19 and scarcity of parts created prolonged delays.  Finally, they fabricated mystery mechanical bugs that were challenging to diagnose and fix in order to create further delays.  In all, the "restoration project" which was started in or about February 2015 and was supposed to be completed in a few months or earlier, has taken almost 8 years.  And presently Defenders Northwest, its owners, including Defendants, claim that the Vehicle "is not roadworthy", as they stated in the general release, they demanded that Plaintiffs sign days before the Vehicle was scheduled to be picked up by an automotive delivery service.  A true and correct copy of the proposed "release" is attached hereto and incorporated by reference as "**Exhibit 2**".

14.     This demand was made suddenly and "last minute" just days before the Vehicle was to be released to Plaintiff on August 8, 2022, as was proposed by Defenders Northwest owners Brian and Michele Hall themselves and agreed to by Plaintiffs. In the ambush of the last-minute general release orchestrated by Defendants, Defenders Northwest LLC, its owners, and Defendants attempted to extort a payment of $20,000.00. That was apparently a bargain compared to the

6

demand for nearly $50,000.00 for "storage" of the Vehicle that Defendant Shawn Harju demanded right after Defenders Northwest owner Brian Hall emailed Plaintiffs' counsel stating, inter alia, that Plaintiffs were good customers and did not owe anything on the restoration project.

15.     It was recently discovered that Defenders Northwest owner Brian Hall filed for personal bankruptcy (Chapter 7) on February 19, 2016 (which was discharged August 26, 2016); however, he never notified Plaintiffs of his financial woes, and affirmed that he was obligated to return the restored Vehicle to Plaintiffs in numerous emails and communications, as per the terms of the Agreement.

16.     In August 2022, Defenders Northwest and its owners, Brian and Michele Hall, unequivocally confirmed that there was no money owed on the Vehicle and during several years of communication with Plaintiffs and their representatives, they never tendered any invoices for work, parts, storage, etc., and never questioned the title of the Vehicle or the authority of the Plaintiffs and their representatives to, inter alia, set up delivery, guide direction of restoration, and process payments.  A true and correct copy of the emails/communication showing that the only topics discussed were delivery and mysterious mechanical issues is attached hereto and referenced hereinafter as "**Exhibit 3**".

17.     Plaintiffs allege on information and belief that in total, Plaintiffs have paid in excess of $140,000.00 (One Hundred Forty Thousand Dollars) for the restoration (parts, miscellaneous expenses, and labor) of the Vehicle.

18.     Presently, Defenders Northwest LLC, its owners, and Defendants have refused to release the Vehicle to Plaintiffs after admitting that there is no money owed. They have admitted that the Vehicle is still not in drivable condition due to an alleged "no-run" issue – one of numerous that would come up every time a delivery date was scheduled.  Instead, after Plaintiffs challenged

and questioned a last minute unreasonable condition for the release of the Vehicle that required Plaintiffs to sign a general release, which the Plaintiffs had not seen at the time the condition was imposed via an email from Michele Hall, Defenders Northwest, its owners, and Defendants refused to release the Vehicle and suddenly demanded ridiculous, illegal and baseless "storage fees", and phantom interest, and additional bogus charges after admitting in written communication that no money was owed and committing to releasing the Vehicle on August 8, 2022.  No invoices were ever tendered to Plaintiffs to reflect the made-up demand for payment made by Defenders Northwest, its owners, and Defendants who also fabricated another fake excuse for refusing to deliver the Vehicle, claiming that they need proof that Plaintiffs have the title to the Vehicle.  A true and correct (redacted) copy of the title is attached hereto and incorporated by reference as "**Exhibit 4**".

19.     Many years of written electronic communication between Defenders Northwest's owners, Defendants, and Plaintiffs and Plaintiff representatives (emails and texts) dispositively show that title to the Vehicle was never in dispute and that there was no money owed on the project. Moreover, when Defenders Northwest owner Brian Hall feigned scheduling delivery dates in the past (which were nothing more than a calculated ruse – a shameless delay tactics to cover up their fraudulent scheme), neither title nor additional fees were ever requested.  Suddenly, a day before Defenders Northwest and its owners were to release the Vehicle to an auto transport company, did the parties and Defendants come up with new reasons why they were not releasing the Vehicle. Defendant Shawn Harju, as Defenders Northwest's partner and part-time lawyer, while copied on previous emails admitting that nothing was owed and there were no conditions to release the Vehicle on August 8, 2022, sent an email demanding storage payments, other payments and interest and threatened to sell the Vehicle; a copy of Defendant Shawn Harju's threats is attached

hereto and incorporated by reference as "**Exhibit 5**". Defenders Northwest's ownersBrian Hall and Michele Hall had not only taken almost 8 years to work on the Vehicle, which they admit is not "in roadworthy condition" and has been in pieces taken apart as of the date that this complaint is filed, but they have also breached the Agreement failing to complete the restoration project.

20.    By way of background, Plaintiffs made numerous timely payments to Defenders Northwest LLC and its owners; majority of the payments were made by credit cards and through PayPal. For example, on January 6, 2015, and January 22, 2015, Plaintiff paid 3 invoices for a total of $14,286.35. One was for Al Tokin, an alleged vendor used by Defenders Northwest and its owners. On January 29, 2015, the parties requested additional payments for "steamship line wants another $6,280.00 for additional demurrage (they have indicated that demurrage keeps adding up even though the container left the terminal for exam they say the exam site is an extension of the terminal) before they will deliver the container to you."

21.    The Vehicle was delivered to Defenders Northwest and its owners on February 2, 2015. On March 27, 2015, after Parties executed the Agreement, Defenders Northwest owner Brian Hall emailed Plaintiff representative, Aaron Cuha explaining that he wanted to sell some of the older stock parts of the Vehicle to offset some of the expenses of the restoration project as follows:

**Q**. What would the cost be [in] total, it is still vague? So, price FOB in WA and with everything swapped. (We realize there can always be extras etc.… but need the final base figure)

**A**. The estimate will vary depending on the cost of the donor (configuration, condition, location) and the scope of work to configure and assemble - fortunately better condition donor parts mean less labor costs

For budgeting you should consider the following rough numbers…" $30K to $45K for the donor DDP to our shop (TDI - TDCI)

$9K to $18K in labor

$12K to $22K in parts - $5K transmission conversion - $5K suspension/upgrades

End product is an original paint (no respray) mechanically complete functioning vehicle configured as externally appearing 2007+ TDCI styled Defender 130 HiCap DC

**Q**. What exactly do you think you can get for the current parts and axels…

**A**. Roughly $30K, Both Axles are $1k together. Front axle is likely worth more parted out as it is sided (RHD), discs/calipers have rust, stubs & balls are pitted, without arms - ~$350+/-

Rear is standard D90 - better condition and has late type disc brakes, no rear pivot or arms - $650+/-

130 Body Parts - $13K-$17K as it sits - possible to pick some parts first

(bulkhead/doors) and replace with non-puma spec from donor and still pull

the same amount (have current customer with $15k offer)

110DC - body parts/motors; without a VIN the truck can be parted out for

$6k-$12K

$1K for chassis from donor

$1K to $4K from donor parts not needed/used (factory suspension,

wheels/tires, etc...)

22.     In an email between Plaintiffs and Defenders Northwest and its owners dated
September 30, 2015, Brian Hall discusses recommendations with Plaintiffs and Plaintiff's
representatives regarding optimal registration for the Vehicle, clearly acknowledging that attorney
Yuri Vanetik (and Defendant officer) and Aaron Cuha represent Plaintiff in all respects related to
the Vehicle.

23.     Subsequently, Plaintiffs represented by Yuri Vanetik who also facilitated invoice
payments and communication with Brian Hall and Michele Hall, made a series of timely payments,
prepaying all alleged labor and parts purchases, and miscellaneous expenses.  Ultimately, Plaintiffs
learned and based on information and belief allege that Defenders Northwest and its owners never
purchased the parts for which invoices were tendered and never performed invoiced labor on the
Vehicle.

24.     Instead, the parties, acting in coordination from the beginning orchestrated a
scheme to defraud Plaintiffs by diverting the funds they received for the vehicle restoration project

11

to pay for their lifestyle and to poach and ultimately steal the Vehicle, defraud their insurance carrier by filing false claims, and defraud the local law enforcement by filing false police reports. On April 24, 2015, Brian Hall sent an email to Plaintiffs stating the following:

a. $6653 Custom fabricated ZF conversion kit from Ashcroft for 300tdi into TDCI cabin including console/linkage, etc.

b. $4410 300Tdi with performance ported head (minimum needed to push the auto transmission).

c. $1500 Turbo, intake plenum, missing/replaced ancillaries from engine delivered.

d. $1543 Front & Rear Defender 130 Propshafts (130 rear propshaft is an expensive item from LR).

e. $1805 LT230 Transfer Box - rebuilt no core charge.

f. Additional parts needed but ones we stock on a regular basis.

g. $945 Adwest LHD 4-bolt Power steering box.

h. ~$4k Suspension (shocks, springs, spring seats, bushing set, trailing arms, rear A-arm).

i. ~$4k misc. large parts (exhaust system, fuel tank, hardware, steering arm & linkage, engine & rear wiring harness, etc.).

j. Defendant Brian Hall claimed in the same email that they have a container ready to ship.

25.     Based on information and belief Plaintiffs allege that this was another ruse to induce payment.  On September 2nd Defenders Northwest and its owners received a $2,000.00 deposit as

part of the fraudulent "labor retainer." Aaron Cuha, Yuri Vanetik (representing the Plaintiffs) and all the parties except for Defendant Shawn Harju and her consulting company were copied on most of the paid invoices.

26. In an email dated September 1, 2015, Brian Hall wrote to Mr. Vanetik and Mr. Cuha that he has "laid the keel", explaining that he has set the frame in place is preparing to put axles under it "next week". This email as well as most of the others sent by Defenders Northwest and its owners was a complete fabrication – a scam.

27. On August 7, 2015, Brian Hall acknowledged additional payment for $5,000.00 and $6,453.00 and confirmed that Defenders Northwest and its owners "received payment for the engine". Subsequent emails confirmed that all invoices had been paid as follows:

a. Engine - invoice # 0000008688,

b. Transfer box - invoice# 0000008689,

c. Front Axle - invoice# 0000008718,

d. Suspension - Invoice# 0000008719, Turbo + manifold- invoice# 0000008720,

e. IP + ancillaries, invoice# 0000008721,

f. Driveline - invoice# 0000008722,

g. Electrical Harnesses - invoice# 0000008722,

h. Chassis - 0000008449,

i. Transmission – 0000008688,

j. Rear Axle housing- 0000000000,

k. Wheels/Tires , and

l. Dash + cluster.

13

28.    On February 20, 2015, after executing the Agreement, Plaintiffs were invoiced for $45,988.46, which represented estimated the total cost of the restoration project of the Vehicle. However, as of the date of this complaint, Plaintiffs have paid the parties in (estimated) excess of $140,000.00. After numerous delays based on outrageous lies that were meticulously forged into fake excuses, the fraudsters refused to release the Vehicle, attempting to extort more money from Plaintiffs – after admitting in writing that there was no money owed and agreeing to release the Vehicle to a vehicle transport carrier on the morning of August 8, 2022, without any conditions, but admittedly in a non-operational state.

29.    Not only did Defenders Northwest and its owners demand money on Sunday the day before Monday 8, 2022, the day that pick up of the Vehicle was scheduled, but they also demanded that Plaintiffs sign a general release.  It was a last-minute introduced condition to releasing the Vehicle, and it was never sent by Defendant Shawn Harju or any of the other Defenders Northwest owners for Plaintiffs and Plaintiffs' counsel to even read before the scheduled vehicle release date when Allied Car Transport was contracted to upload the Vehicle at Defenders Northwest's shop in Gig Harbor.  When the Plaintiffs protested that it appeared unreasonable to demand a general release last-minute pertaining to a vehicle that they had not seen, Defendant Shawn Harju sent a threatening email, incredulously claiming, inter alia, that there was money owed for labor/parts and for storage, and that Defenders Northwest would not release the Vehicle until and unless Plaintiffs prove that they are the title holders because sudden and disingenuous "confusion" about the Vehicle's ownership.  In fact, empirical evidence shows that there was no money owed and there was no confusion or dispute about title or authority of the attorneys and representatives that were providing direction, approving and sending payments to Defenders Northwest and its owners over many years that the purported restoration project dragged

14

on.  Only after refusing to release the Vehicle and making threats and demands predicated on truly absurd allegations (which Defendant Shawn Harju incredulously dismissed as her way of "Advocating" for the Defendants) – only then – did Defendant Shawn Harju sent a proposed general release, which opaquely described the Vehicle as "*NOT* road worthy" and demanded a payment of $20,000.00 as ransom for its release.  This was an effort to deliver a stripped chassis and some salvage parts that Defenders Northwest and its owners stripped but have not been able to sell, having unloaded the rebuilt Defender 130 to third parties after taking it without Plaintiffs' permission to the SEMA auto show in Las Vegas, Nevada.  The madness and audacity of Defenders Northwest's, its owners', and Defendant Shawn Harju's excuses, claims and demands clearly showed their dishonesty and desperation, exposing their scheme to defraud Plaintiffs. Sadly, projecting their sociopathy, Defenders Northwest, its owners, and Defendants misinterpreted Plaintiffs kindness, patience and generosity for weakness.

30.    In fact, Plaintiffs are informed and believe, and based upon such information and beliefs allege that Defenders Northwest and its owners never purchased or installed an engine in the Vehicle or any other parts.  On July 23, 2015, Defenders Northwest, its owners, and Defendants sent another set of fraudulent invoices and summarized them. These included payments for the engine, transfer box, front axle, suspension, turbo and manifold, IP and ancillaries, driveline, and electrical harnesses.  Pending payments were for wheels and tires and the dash and cluster. In the same email, Brian Hall acknowledged that most of the parts had already been "funded" by the Plaintiffs and indicated that he would be back in Orange County again staying in Laguna Beach to suggest that Plaintiffs' representatives meet him for coffee.  Ultimately, Defenders Northwest, its owners, and Defendants have shamelessly schemed to defraud Plaintiffs and have perpetrated their fraudulent scheme for almost 8 years.

**THIRD CAUSE OF ACTION FOR FRAUD**

*(AGAINST SHAWN HARJU, CHRYSALIS SOLUTIONS PLLC, AND DOES 1 THROUGH 25, INCLUSIVE)*

31.     Plaintiffs incorporate paragraphs 1 through 30 as though fully pled herein.

32.     On or about February 20, 2015, Brian Hall, and Michele Hall, as principals of Defenders Northwest, LLC and Defenders Northwest LLC entered into the Agreement with Plaintiffs represented by Aaron Cuha and Yuri Vanetik, who were representing, advising, and assisting Plaintiffs in planning a restoration project for the Vehicle (a 1984 Land Rover Defender) as herein alleged and specified in **Exhibit 1**. More specifically, each and all of them made affirmative representations that they would timely and professionally restore the Vehicle within a period of approximately 3-5 months or sooner.  It was during this time period that Plaintiffs believed that they would purchase parts according to the invoices for, inter alia, parts and labor that they would send to Aaron Cuha and subsequently to Yuri Vanetik, attorney and director of Belmont. Vanetik and Cuha would get the invoice paid, assuming that the parties actually performed the tasks described in the invoices.

33.     From the middle of 2015 through present day, the parties claimed that the Vehicle was complete, but lacked miscellaneous parts that were "back ordered" from England and other countries where the parties claimed they were sourcing the parts for the restoration project. The parts delays were predicated on COVID-19 delays and shutdown and 2 claimed incidents of burglary and vandalism.  Then, the parties claimed that there were delays because of phantom non-run issues that had plagued the Vehicle. There were delays after delay and excuses after excuses to the point that the parties lost any possible credibility.  This complete deterioration of credibility

culminated in a grotesque farce when on the eve of the day that the Vehicle was scheduled to be picked up and delivered to Plaintiffs, Defendant Shawn Harju sent off a bizarre demand letter entirely inconsistent with previous communication between parties and the facts surrounding the vehicle's restoration, claiming that various random and fake payments had to be made to persuade the parties to release the Vehicle to its owners, and threatening to lien and sell the Vehicle if the demands for payment were not met. Plaintiff represented by Mr. Vanetik, who is an attorney and officer of Belmont, initially trusted and agreed to accommodate the parties because of their online reputation, which turned out to be carefully and fraudulently curated to enable the parties to perpetrate the fraud. Brian Hall and Michele Hall operating through Defenders Northwest indexed themselves in the Defender restoration community as Land Rover restoration experts. Initially, the excuses they were coming up with appeared on their face plausible, but multiple last-minute breakdowns, peculiar schedule delays, repeated COVID-19 delays, repeated incidents of burglary and vandalism and the parties' shameless efforts to avoid committing to a bone fide delivery date ultimately made it clear that the fraudsters were just continuing to buy time, and that the Vehicle was gone and had never been restored per Agreement.

34.     Then, as time progressed, the parties' reasons for not committing to a delivery date became progressively more bizarre. Brian Hall would come up with new problems during the test drives of the Vehicle, even though all the parts were supposed to be legitimate Land Rover parts. The parties, relying on Plaintiff's good will and patience shamelessly continued to play games, finally coming up with two staged burglaries and vandalism incidents, sending Plaintiffs copies of police reports and pictures, and insurance claims.

35.     Plaintiffs are informed and believe, and based upon such information and belief allege, that the parties filed false claims with their insurance carrier and fabricated documents and

facts to create further delays, and just like Ponzi Scheme operators, The parties were desperately buying time and placating Plaintiffs with detailed but fake descriptions of their efforts to work on the Vehicle.

36.    Defendant Shawn Harju conspired and assisted the aforementioned Defendants in their fraudulent scheme by orchestrating a scheme to place fraudulent liens on the vehicle to permanently deprive the Plaintiffs of their lawful possession of the Vehicle and use the Vehicle for their own financial benefit.

37.    After Plaintiffs retained counsel and demanded that the Vehicle be released regardless of the claimed "no-run" issues and Defendants' admission that the Vehicle was not road worthy, it became clear to the Plaintiffs who allege on information and belief that the parties and Defendants were stalling because they had lied from the inception, and never had the resources or inclination to restore the Vehicle, but rather sent fraudulent invoices from Gig Harbor, Washington to Irvine, California and misappropriated the invoice payments, and just poached the Vehicle to line their own pockets.

38.    Plaintiffs are informed and believe, and based upon such information and belief allege, that scammers Brian T. Hall and Michele A. Hall, Defendant Shawn Harju and Defendant Chrysalis Solutions deceived Aaron Cuha and Yuri Vanetik and Plaintiffs into believing that they had experience in restoring vintage Land Rovers and that they would restore the Vehicle. In reality, the parties and Defendants acting in unison were nothing more than shameless, serial fraudsters who never intended to perform any work on the Vehicle and never intended to return it in any condition to Plaintiffs, disgracing the Land Rover Defender restoration industry and the community of Defender enthusiasts.

18

39.     More specifically, throughout February 2015 to present day, the parties, each of them, represented that they would restore the Vehicle according to specifications in the Agreement and subsequent invoices but failed to do any of the work.  As further material misrepresentations, each and all of the Defendants as named herein promised to personally complete the restoration project in a timely manner.  It appears that Defendant Harju and Defendant Chrysalis Solutions are experienced in schemes to defraud and are currently in litigation over various crimes perpetrated on a lender.

40.     Plaintiffs reasonably relied upon each, and all representations made by Defendants; and had no reason to know that Brian Hall and Michele Hall and Defenders Northwest had no intention to perform on the Agreement.  At the time each and all representations were made by Defendants, Plaintiffs believed them to be true.

41.     Each and all representations made by Defendants were knowingly false and made without any promise to perform upon the representations as herein alleged and those made in writing and those **Exhibit 1** referenced herein.  The parties could not complete the restoration project because they lacked the resources and know-how since they embezzled the invoiced funds paid to them by Plaintiffs.  The parties knew of this impossibility yet led Plaintiffs to believe they could complete the restoration and that it had been completed, but for last minute no-run glitches and burglaries and vandalism – all devious and shameless lies concocted by Brian Hall, Michele Hall, Defenders Northwest and  Defendants Shawn Harju and Chrysalis.

42.     As a result of each and all of the false representations made herein as alleged, Plaintiffs have suffered special and general damages in excess of the jurisdictional limit to be proven at the time of trial.

43.     The conduct of each and all of the Defendants as alleged herein was oppressive, malicious and intentional to justify imposition of punitive damages pursuant to California Civil Code§ 3294, which also was a substantial factor in causing Plaintiffs' harm.

44.     Plaintiffs are informed and believe, and based upon such information and belief allege, that on or about February 20, 2015, Defendants, and each of them, made material representations that they would honestly and competently conduct the restoration of the Vehicle in a timely manner and pursuant to industry standards, and in a manner so as not to violate any laws or cause financial hardship to or harm to Plaintiffs.

45.     At the time that each and all of the representations were made, as herein alleged, Defendants made such representations knowing that they were false, without any intention of performing on those promises and with specific intent to induce reliance of Plaintiffs to allow each and all Defendants to tender invoices for labor and parts and import duties and related costs.

46.     At the time that each and all of the representations were made, Plaintiffs had no knowledge that said representations were false, or that Defendants made such representations without any intention to perform any of them; and therefore, Plaintiffs' reliance was justifiable.

47.     As a result of Plaintiffs' justifiable reliance upon each and all representations of Defendants, Plaintiffs have suffered great injury and damages which include but are not limited to financial hardship, loss of income, special damages in an amount unknown but exceeding $300,000.00, and extreme emotional distress.

48.     The conduct of each and all of the Defendants as alleged herein was oppressive, malicious and intentional to justify imposition of punitive damages pursuant to California Civil Code§ 3294, which also was a substantial factor in causing Plaintiffs' harm.

49.     As a result of each and all of the representations made as herein alleged, Plaintiffs suffered further and excessive injury in that there were other vehicles that had to be purchased by Defendants for which damages were incurred that were the direct result of the intentional, oppressive, malicious and fraudulent misrepresentations of each and all Defendants named herein amount to in excess of $300,000.00, and Plaintiffs herein reserved the right to amend this Complaint upon further proof of damages at the time of trial.

50.     The conduct of each and all of the Defendants as alleged herein was oppressive, malicious and intentional to justify the imposition of punitive damages pursuant to California Civil Code§ 3294, which also was a substantial factor in causing Plaintiffs harm and therefore Plaintiffs seek Punitive damages in an amount to be proven at the time of trial in order to punish the Defendants and to deter others from engaging in such fraudulent conduct.

**FOURTH CAUSE OF ACTION FOR CONVERSION**

*(AGAINST SHAWN HARJU, CHRYSALIS SOLUTIONS PLLC, AND DOES 1 THROUGH 25, INCLUSIVE)*

51.     Plaintiffs incorporate paragraphs 1 through 50  as though fully pled herein.

52.     From February of 2015 through present day, Defendants and each of them intentionally took and embezzled cash, and credit card payments and the Vehicle in an amount estimated to be $400,000, to be proven at the time of trial.

53.     At this time Plaintiffs are informed and believe that Defendants took in, in excess of $140,000.00 and the Vehicle, and vehicle parts.

21

54.    It is also alleged that during the same time Defendants and each of them intentionally exercised dominion and control over personal property, vehicles parts, other unknown items to be proven at the time of trial; which were owned by Plaintiffs.

55.    Plaintiffs did not consent or authorize Defendants' taking of their property, which exceeds a monetary amount exceeding $400,000.00, and to be proven at the time of trial.

56.    Such unauthorized taking and exercised dominion and control over said property, theft of funds and embezzlement is a direct and proximate result of Plaintiffs' substantial monetary damage to be proven at the time of trial.

57.    The conduct of each and all of the Defendants as alleged herein was oppressive, malicious and intentional to justify imposition of punitive damages pursuant to California Civil Code §3294 which also was a substantial factor in causing Plaintiffs harm and seek punitive damages in an amount to be proven at the time of trial to punish the Defendants and to deter others from engaging in such conduct.

## FIFTH CAUSE OF ACTION FOR FRAUDULENT TRANSFER

*(AGAINST SHAWN HARJU, CHRYSALIS SOLUTIONS PLLC, AND DOES 1 THROUGH 25, INCLUSIVE)*

58.    Plaintiffs incorporate paragraphs 1 through 57 as though fully pled herein.

59.    Plaintiffs are informed and believe and based upon such information and belief allege that on or about February of 2015 up through April of 2021 the Defendants and each of them entered into a series of financial transactions involving the Vehicle and its parts to secure lines of credit and financial assistance from the U.S. government.

60.     At present the Plaintiffs are unaware of the true gravity of the theft and transfer and hereby reserve their right to seek leave to amend when additional information is obtained.

61.     Each and all Defendants, as alleged herein, transferred certain vehicle parts into their own names or entities operated by Defendants in such a manner with the specific intent to hinder, delay or defraud Plaintiffs.

62.     It is further alleged that each and all Defendants named herein, operated, and conducted themselves illegally, in that they did not have proper authorization from the state of Washington or California to involve themselves in motor vehicle transactions as Plaintiffs are the true owners of said vehicle as shown in the redacted title in **Exhibit 4** of this complaint. In all times during the alleged transactions that were conducted by each and all of the Defendants there was a specific intent to defraud Plaintiffs.

63.     As a direct result of the intentional, malicious and oppressive acts as herein alleged, Plaintiffs have been damaged in an amount that is in excess of the minimum jurisdictional limit of this Court to be proven at the time of trial.

The conduct as alleged herein by each and all of the Defendants was a substantial factor in causing Plaintiffs harm, which was oppressive malicious and intentional so as to justify an award punitive damages against them pursuant to California Civil Code § 3294 in order to punish the Defendants and to deter others from engaging in such illegal activity.

## SIXTH CAUSE OF ACTION FOR CONSTRUCTIVELY FRAUDULENT TRANSFER

*(AGAINST SHAWN HARJU, CHRYSALIS SOLUTIONS PLLC,, AND DOES 1 THROUGH 25, INCLUSIVE)*

64.     Plaintiffs incorporate paragraphs 1 through 63 as though fully pled herein.

23

65.     That at all times, each and all of the alleged Defendants have now become creditors to these complaining parties by the results of their own actions as alleged herein.

66.     That on or about February of 2015 through April of 2021, Defendants and each of them, as alleged herein, engaged in or were about to engage in vehicle transactions and vehicle parts transactions, for vehicles known to have been personally guaranteed by Plaintiffs, said vehicles and parts (the assets) were transferred for value, which was unreasonably small in relation to the encumbrances and claimed rights of Plaintiffs as incorporated herein.

67.     Defendants and each of them specifically intended to incur, believed or reasonably believed a transfer for value that was unconscionable, unfair and unreasonably small in relation to the property that Defendants were acquiring, was known to be converted property guaranteed by Plaintiffs and wrongfully appropriated for each and all of the Defendants' personal and financial gain.

68.     Plaintiffs have a right to repayment, attachment, return or injunctive relief from said Defendants in an amount that substantially exceeds the minimum jurisdiction of this Court to be proven at the time of trial.


**SEVENTH CAUSE OF ACTION FOR QUIET TITLE**

*(AGAINST SHAWN HARJU, CHRYSALIS SOLUTIONS PLLC, AND DOES 1 THROUGH 25, INCLUSIVE)*


69.     Plaintiffs incorporate paragraphs 1 through 68 as though fully pled herein.

70.     Plaintiffs are informed and believe that Defendants and each of them have gained possession to certain Vehicle and property for which Plaintiffs are the rightful and lawful owners as shown in **Exhibit 4**.

24

71.     At present the Plaintiffs are unaware of the true gravity of the theft and transfer and hereby reserve their right to seek leave to amend when additional information is obtained.

72.     Plaintiffs herein allege that the rights and interest have been violated and they have been damaged by such wrongful possession by Defendants.

73.     At this time, Plaintiffs are aware of the dispute as to the ownership rights and interest in said parts and property and request that an order be granted quieting title to the Vehicle and property to Plaintiffs and as against Defendants and any persons known to be claiming legal and or equitable right, title, interest or otherwise state a lien or interest in said property and vehicles.

74.     At this time, Plaintiffs are informed and believe that the subject vehicles are in the possession of these named Defendants and further reserve the right to seek attachment possession and or orders of this Court preventing the sale disposition and or further injury of Plaintiffs in amount to be proven at the time of any motion and or trial.


**EIGHTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

*(AGAINST SHAWN HARJU, CHRYSALIS SOLUTIONS PLLC, AND DOES 1 THROUGH 25, INCLUSIVE)*


75.     Plaintiffs incorporate paragraphs 1 through 74 as though fully pled herein.

76.     From a period beginning on or about February of 2015 up until present day, Defendants, and each of them, were aware that Plaintiffs had invested a great deal of time and effort in financing the Vehicle, and that the expense of paying for the Vehicle has caused Chad

Ullery to fall into a state of distress and depression. This has further exacerbated the effect of his head and other injuries incurred during his mixed martial arts career and work as a bodyguard.

77.     At all times, Defendants and each of them so knowingly and intentionally and maliciously and oppressively engaged in outrageous conduct, which was an abuse of their relationship with Plaintiffs, and abuse of their position, which gave them power to damage Plaintiffs' financial and personal health as they made representations that the Vehicle would be road worthy and would be delivered on multiple occasions, only to fabricated ridiculous and fake reasons why the Vehicle cannot delivered, mocking and tormenting Plaintiffs.

78.     Defendants further engaged in a pattern of conduct by alleging and representing that all the restoration parts were received and installed in a timely manner, knowing that the lies once discovered would cause Plaintiffs great distress.

79.     At all times, Defendants engaged in the acts as so herein complained of; that each and all of them knew, or with certainty or with reckless disregard of knowing that said conduct would and or could cause Plaintiffs severe emotional distress.

80.     More specifically, each and all of the Defendants continued on a scheme to embezzle money personal goods and the Vehicle and cause damage to Plaintiffs, knowing that the ongoing fraudulent scheme would cause Plaintiff severe emotional distress.

81.     Each and all of these representations were knowingly false at the time they were made, and further Defendants knew or were substantially certain that said misrepresentations, would result in financial harm to Complainant, or with reckless disregard knew that such misrepresentations and subsequent acts, as herein alleged, were substantially certain to cause; and did cause Plaintiffs severe emotional distress.

82.     The true facts are that each and all of the Defendants, never intended to restore the Vehicle or acquire parts for the Vehicle; instead, Defendants engaged in fraudulent transactions where Plaintiffs were personally liable, so as to cause extreme and ongoing emotional distress.

83.     As a further and continuing damage to Plaintiffs, each and all of the Defendants knew that the acts that complained of herein were outrageous and done with the specific intent to cause or with reckless disregard of causing severe emotional distress to Plaintiffs.

84.     As a further and ongoing harm Plaintiffs has suffered extensive and severe emotional distress as a direct result of each and all the actions complained of herein.

85.     Each of the Plaintiffs' injuries and damages are substantial and in an amount in excess of the minimum jurisdiction of this Court and seek right to prove said damages at the time of trial.

86.     The conduct of each and all of the Defendants as herein alleged was oppressive, reckless, intentional, and or malicious, and seek an imposition of an award of punitive damages against said Defendants pursuant to civil code §3294 to punish the Defendants and to deter others from engaging in such harmful activity in the future.


**NINTH CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
*(AGAINST SHAWN HARJU, CHRYSALIS SOLUTIONS PLLC, AND DOES 1 THROUGH 25, INCLUSIVE)*


87.     Plaintiffs incorporate paragraphs 1 through 86 as though fully pled herein.

88.     At all times, Defendants and each of them made representations and promises that they would diligently and timely restore the Vehicle pursuant to the Agreement and the invoices.

89.     At all times during the restoration project, which As Plaintiffs learned never took place, Defendants owed certain duties; Defendants had a specific relationship and duty toward Plaintiffs, as herein alleged, and as further referenced throughout this complaint.

90.     The true facts are that each and all of the Defendants named herein negligently discharged their duties by failing to honor the promises and obligations to Plaintiffs, which resulted in Plaintiffs' financial harm, as well as and exacerbated Chad Ullery's health problems.

91.     As a direct and proximate cause of the negligence as herein alleged Plaintiffs and each of them suffered severe and ongoing emotional distress, which is in excess of the minimum jurisdiction of this Court to be proven at the time of trial.

## TENTH CAUSE OF ACTION FOR ACCOUNTING

### *(AGAINST SHAWN HARJU, CHRYSALIS SOLUTIONS PLLC, AND DOES 1 THROUGH 25, INCLUSIVE)*

92.     Plaintiffs incorporate paragraphs 1 through 91 as though fully pled herein.

93.     The Defendants and each of them have received monies from Plaintiffs.

94.     The amount of money due from the Defendants, and each of them, are unknown and cannot be ascertained without an investigation and accounting of the whereabouts, of such funds, the receipts of said moneys and the disbursements if any made.  Plaintiffs are informed and believe that the amounts wrongfully taken and kept, including the interest therein, exceed the minimum jurisdictional limit of the Court.

95.     Each and all Defendants, as alleged herein, were fiduciaries  of the Plaintiffs who held vehicle and funds and owed a duty of care to Plaintiffs, so as not to engage in illegal vehicle transactions, take actions that could harm Plaintiffs' financial interests that were tied to the

Agreement, herein alleged and incorporated in **Exhibit 1**, and not take actions that could injure Plaintiffs, which include failing to pay for parts and to pay contractors for labor.

96.     Each and all of the transactions involved in by Defendants could not have taken place without any direct negative effect on the contracting parties' ability to pay for their obligations under **Exhibit 1.**

97.     As a direct result of the negligent, illegal, oppressive, fraudulent and false representations, Plaintiffs were harmed and Defendants, and each of them, were unjustly enriched.

98.     Complaints are entitled to accounting of all business dealings, business transactions, books of operations and business operations of Defendants, and unknown Defendants hereinafter named as DOES 1 through 25, Inclusive.

99.     Each and all parties owed a fiduciary duty to Plaintiffs, as herein alleged, and have breached said fiduciary duties entitling them to an accounting of their operations, which so damaged Plaintiffs as herein, alleged, in order to trace and recover money and property they have wrongfully taken from this complaint in an amount unknown but at least $300,000.00 to be proven at the time of trial.


**ELEVENTH CAUSE OF ACTION FOR CONSTRUCTIVE TRUST**
*(AGAINST SHAWN HARJU, CHRYSALIS SOLUTIONS PLLC, AND DOES 1 THROUGH 25, INCLUSIVE)*


100.     Plaintiffs incorporate paragraphs 1 through 99 as though fully pled herein.

101.     Defendants are in possession of one 1984 Land Rover Defender whose VIN numbers end in xxx 9342.  Please find the attached title **Exhibit 4**.

102.    The Plaintiffs as shown in **Exhibit 4** are the true owners of the subject property, and Defendants and each of them took possession to restore said Vehicle and are currently actively engaging to sell and dispose of said vehicle.

103.    Plaintiffs seek the Court's to order and awarded a constructive trust over said vehicle in order to prevent its destruction and loss.

**TWELFTH CAUSE OF ACTION FOR THEFT (VIOLATION OF WASH. REV. CODE §9A.56.070)**

(*AGAINST SHAWN HARJU, CHRYSALIS SOLUTIONS PLLC, DOES 1 THROUGH 25, INCLUSIVE*)

104.    Plaintiffs incorporate paragraphs 1 through 103 as though fully pled herein.

105.    Plaintiffs on information and belief assert in good faith that Brian Hall, Michele Hall, Defenders Northwest, LLC, AutoHome, USA, along with Defendant Shawn Harju and Defendant Chrysalis Solutions PLLC have unlawfully and without permission of Plaintiffs, taken the Vehicle that is the subject of the present litigation for the intent and purpose of depriving Plaintiffs of the Vehicle in order to unlawfully derive a financial profit and benefit from the Vehicle that was in their control and possession.

106.    Pursuant to Washington Revised Code Section 9A.56.070(1), "a person is guilty of taking a motor vehicle without permission in the first degree if he or she, without the permission of the owner or person entitled to possession, intentionally takes or drives away an automobile or motor vehicle…that is the property of another[...]"

107.    Defendants have willfully and deliberately stolen the Vehicle subject to the present litigation in violation of Washington Revised Code Section 9A.56.070(1).

108.    Defendant Shawn Harju and Defendant Chrysalis Solutions assisted  Brian Hall, Michele Hall, Defenders Northwest, and AutoHome USA in the development and execution of a plan to impose fraudulent liens on the Vehicle to deter Plaintiffs from regaining possession of the Vehicle, aiding the parties in their fraudulent scheme of unlawfully taking the Vehicle. When Plaintiff offered to satisfy the fraudulent lien (under protest) to receive the Vehicle, Defendants and the parties stopped responding to Plaintiffs' counsel once again demonstrating that they had no intention and or ability to deliver the Vehicle under any circumstances.

109.    As a direct and proximate cause of Defendants' theft, Plaintiffs continue to incur damages, which is in excess of the minimum jurisdiction of this Court to be proven at the time of trial.

**THIRTEENTH CAUSE OF ACTION FOR TRAFFICKING IN STOLEN PROPERTY (VIOLATION OF RCW 9A.82.050)**

*(AGAINST SHAWN HARJU, CHRYSALIS SOLUTIONS PLLC, AND DOES 1 THROUGH 25, INCLUSIVE)*

110.    Plaintiffs incorporate paragraphs 1 through 109 as though fully pled herein.

111.    Plaintiffs on information and belief assert in good faith that Brian Hall, Michele Hall, Defenders Northwest, LLC, AutoHome, USA along with DefendantShawn Harju, and Defendant Chrysalis Solutions PLLC have unlawfully and without permission of Plaintiffs, knowingly initiated, organized, planned, financed, directed, managed, and supervised the theft of the Vehicle that is the subject of the present litigation.

112.    Pursuant to Washington Revised Code Section 9A.82.050, "[a] person who knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of

property for sale t others, or who knowingly traffics in stolen property, is guilty of trafficking in stolen property in the first degree."

113.    Defendants have willfully and deliberately knowingly initiated, organized, planned, financed, directed, managed, and supervised the theft of the Vehicle subject to the present litigation in violation of Washington Revised Code Section 9A.82.

114.    Defendant Shawn Harju and Defendant Chrysalis Solutions assisted  Brian Hall, Michele Hall, Defenders Northwest, and AutoHome USA in the development and execution of a plan to impose fraudulent liens on the Vehicle to deter Plaintiffs from regaining possession of the Vehicle, aiding the parties in their fraudulent scheme of unlawfully taking the Vehicle. When Plaintiff offered to satisfy the fraudulent lien (under protest) to receive the Vehicle, Defendants and the parties stopped responding to Plaintiffs' counsel once again demonstrating that they had no intention and or ability to deliver the Vehicle under any circumstances.

115.    As a direct and proximate cause of Defendants' theft, Plaintiffs continue to incur damages, which is in excess of the minimum jurisdiction of this Court to be proven at the time of trial.

**FOURTEENTH CAUSE OF ACTION FOR FEDERAL WIRE FRAUD (VIOLATION OF 18 U.S.C. § 1343)**

(*AGAINST SHAWN HARJU, CHRYSALIS SOLUTIONS PLLC, AND DOES 1 THROUGH 25, INCLUSIVE*)

116.    Plaintiffs incorporate paragraphs 1 through 115 as though fully pled herein.

117.    Plaintiffs on information and belief assert in good faith that Brian Hall, Michele Hall, Defenders Northwest, LLC, AutoHome, USA, along with Defendant Shawn Harju and

Defendant Chrysalis Solutions PLLC have unlawfully devised and intended to devise a scheme to defraud for the purpose of obtaining money and the Vehicle by means of false or fraudulent pretenses, representations, and caused to be transmitted by means of wire communication in interstate commerce writings, signals, and sounds for the purpose of executing such scheme.

118.    Pursuant to 18 U.S.C. § 1343, "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both."

119.    Defendants and the parties have willfully and deliberately perpetuated a scheme to defraud Plaintiffs and obtain the Vehicle by fraudulent pretenses in violation of 18 U.S.C. § 1343.

120.    Defendant Shawn Harju and Defendant Chrysalis Solutions assisted Brian Hall, Michele Hall, Defenders Northwest, and AutoHome USA in the development and execution of a plan to impose fraudulent liens on the Vehicle to deter Plaintiffs from regaining possession of the Vehicle, aiding the parties in their fraudulent scheme of unlawfully taking the Vehicle. When Plaintiff offered to satisfy the fraudulent lien (under protest) to receive the Vehicle, Defendants stopped responding to Plaintiffs' counsel once again demonstrating that they had no intention and or ability to deliver the Vehicle under any circumstances.

121.    As a direct and proximate cause of Defendants' theft, Plaintiffs continue to incur damages, which is in excess of the minimum jurisdiction of this Court to be proven at the time of trial.

**FIFTEENTH CAUSE OF ACTION FOR UNFAIR AND DECEPTIVE TRADE PRACTICES (VIOLATION OF WASHINGTON UNFAIR BUSINESS PRACTICES ACT)**

(*AGAINST BRIAN T. HALL, MICHELE A. HALL, DEFENDERS NORTHWEST LLC, SHAW HARJU, CHRYSALIS SOLUTIONS PLLC, AUTOHOME USA, AND DOES 1 THROUGH 25, INCLUSIVE*)

122.    Plaintiffs incorporate paragraphs 1 through 121 as though fully pled herein.

123.    Defendants, by perpetuating their fraudulent scheme and unlawfully retaining possession of the vehicle, engaged in an unfair and deceptive business practice.

124.    Defendant's unfair and deceptive business practice occurred in commerce as it involved the restoration of the vehicle and services that directly affect the people of the State of Washington and individuals residing in other states that may engage Defendants for their services.

125.    Plaintiffs have been injured and continue to be injured by Defendants' unfair and deceptive business practice.

126.    As a direct and proximate cause of Defendants' theft for which Plaintiffs continue to incur damages, which is in excess of the minimum jurisdiction of this Court to be proven at the time of trial.

**SIXTEENTH CAUSE OF ACTION FOR CIVIL CONSPIRACY**

(*AGAINST BRIAN T. HALL, MICHELE A. HALL, DEFENDERS NORTHWEST, LLC, AUTOHOME, USA, SHAWN HARJU, CHRYSALIS SOLUTIONS PLLC AND DOES 1 THROUGH 25, INCLUSIVE*)

127.    Plaintiffs incorporate paragraphs 1 through 126 as though fully pled herein.

128.    Defendants Brian Hall, Michele Hall, Defenders Northwest, and AutoHome USA conspired to deprive Plaintiffs of the Vehicle for their own financial profit and gain.

129.    Defendant Shawn Harju and Chrysalis Solutions PLLC have assisted Defendants in this fraudulent scheme by orchestrating a plan to impose an unenforceable lien on the vehicle.

130.    As a direct and proximate cause of Defendants' theft for which Plaintiffs continue to incur damages, which is in excess of the minimum jurisdiction of this Court to be proven at the time of trial.

**SEVENTEENTH CAUSE OF ACTION FOR BREACH OF BAILMENT**

(*AGAINST BRIAN T. HALL, MICHELE A. HALL, DEFENDERS NORTHWEST LLC, AUTOHOME USA, SHAWN HARJU, CHRYSALIS SOLUTIONS PLLC, AND DOES 1 THROUGH 25, INCLUSIVE*)

131.    Plaintiffs incorporate paragraphs 1 through 130 as though fully pled herein.

132.    Plaintiffs delivered the vehicle to Defendants pursuant to their valid contract for restoration services and Defendants accepted the Vehicle. The Vehicle remained within Defendants' exclusive control and possession beginning from the time of delivery.

133.    Not only did Defendants fail to restore the Vehicle pursuant to the parties' contract, but they willfully and intentionally engaged in conduct to deprive Plaintiffs of the vehicle for their own financial benefit and profit.

134.    To date, Defendants have failed to return the Vehicle to Plaintiffs or even allow Plaintiffs an opportunity to properly see or inspect the Vehicle.

135.    Defendants' actions have led to Plaintiffs suffering serious injury and continue to incur damages.

35

136.    As a direct and proximate cause of Defendants' theft for which Plaintiffs continue to incur damages, which is in excess of the minimum jurisdiction of this Court to be proven at the time of trial.

## EIGHTEENTH CAUSE OF ACTION FOR DECLARATORY RELIEF

(*AGAINST BRIAN T. HALL, MICHELE A. HALL, DEFENDERS NORTHWEST LLC, AUTOHOME USA, SHAWN HARJU, CHRYSALIS SOLUTIONS PLLC, AND DOES 1 THROUGH 25, INCLUSIVE*)

137.    Plaintiffs incorporate paragraphs 1 through 136 as though fully pled herein.

138.    There is a written agreement between Plaintiffs and Defendants.  That agreement calls for the restoration of the subject vehicle and once completed, the vehicle was to be returned to the Plaintiffs.  Despite paying for the restoration and delivering the vehicle to the defendants, they have refused to return the vehicle.  Further, the defendants filed a fraudulent lien, and even under protest, plaintiffs were willing to pay for the lien to gain possession of their rightful property.  The defendants have refused, and further, it is alleged that after an inspection was conducted, the defendants stole the vehicle, and another Defender130, which was in very poor condition, was attempted to be passed off as Plaintiff's vehicle.

139.    At this time, an actual controversy exists involving the Plaintiff and Defendants' rights and obligations regarding vehicle possession.  There is a present controversy as to whether the vehicle given to Defendants by Plaintiffs to be restored and now inspected is a fraud and whether the vehicle attempted to be passed off by Plaintiffs is a fraud.  Only the Defendants know the true whereabouts of the subject vehicle.

140.    The Plaintiffs request that this court issue and decide if the vehicle that was produced at the inspection is truly the Plaintiffs, and if it is not, that the court issue an order to

36

recover the vehicle wherever that may be and compel under the court order to have Defendant locate the vehicle and provide the whereabouts of that vehicle so that Plaintiff can gain possession of the vehicle.

## DEMAND FOR JURY TRIAL FOR DETERMINATION OF ALL CAUSES OF ACTION

*Plaintiffs hereby demand trial by jury for a determination as to all causes of action as herein alleged.*

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

1.      For any and all economic damages according to proof of at least $400,000;

2.      For general damages in an amount to be determined according to proof at trial;

3.      For costs of suit incurred herein;

4.      For any and all prejudgment interest, post-judgment interest according to proof;

5.      For attorney's fees and costs according to contract and in pursuit of the recovery of property and damages pursuant to *California Civil Code §3336*;

6.      For punitive damages against each and all Defendants in an amount to be determined according to proof at trial, where applicable;

7.      For an accounting;

8.      For a constructive trust of the subject vehicle and its parts;

9.      For attorneys' fees and costs pursuant to contract;

10.     For any and all contractual and equitable relief allowed by law; and

11.     For such other and further relief as the Court deems just and proper.

12.     For Declaratory Relief ordering the vehicle returned to the Plaintiffs.

37

DATED: July 22, 2024,                          **A.G. ASSANTI & ASSOCIATE, P.C.**

By: _____

 Alessandro G. Assanti, Esq., Attorney for Plaintiffs,
Chad Ullery and Belmont Asset Solutions, LLC

**ETEMADI LEGAL GROUP PC**

By: *Donna Etemadi*

Donna Etemadi, Esq., Attorney for Plaintiffs,
Chad Ullery and Belmont Asset Solutions, LLC

38

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# Exhibit 1

25
26
27
28



# Defenders Northwest

## Automotive Restoration Agreement

This Defenders Northwest Automotive Restoration Agreement (the "Agreement") made on the **20 day of February, 2015**, between Chad Ullery and Belmont Asset Solutions, LLC the owners of a 1984 Land Rover Defender VIN ending in -9342 with CA title (the "Defender") acquired for their benefit by customer representatives and principals Aaron Cuha and Yuri Vanetik (the "Client") on one hand and Brian Hall and Michele Hall and Defenders Northwest located at 915 26th Ave NW Suite C9 Gig Harbor, WA 98335, (the "Contractor"). Collectively, Client and Contractor shall be referred to as Parties.

Whereas, *Client* is a private car collector and enthusiast and desires to restore the Defender to its original state with all safety measures and in compliance with all applicable laws and regulations;

Whereas, *Contractor* is **an expert** in restoration of vintage and other Land Rover Defender vehicles, and owns all tools and equipment used in the trade and operates a body shop that restores Land Rovers and brokers parts for Land Rovers;

Now, therefore, for and in consideration of the mutual covenants contained in this agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

## 1. Duties of Client and Payments

*Client* agrees to pay invoices as they are presented for payment, but no later than within 30 days from the date they are tendered, and to communicate with Contractor, providing necessary approvals and direction in connection with the restoration project to the Contractor. Client may do so through authorized representatives (i.e. designated parties, counsel, etc.). In the event of a Client initiated "hold" on work, a $100.00 per month storage fee may be assessed, and will be payable when noticed and invoiced. If the Defender is completed and left at the shop, after 2 months a charge of $25/day may be assessed at Contractors discretion, and if assessed will be paid when noticed and invoiced. On the 15th day of the month, *Client* shall pay to *Contractor* all sums owing for work paid during the preceding month pursuant to invoice(s) presented in electronic form and acknowledged by Client.

## 2. Duties and Warranties of Contractor

*Contractor* agrees to:
   a. Perform agreed upon restoration work under this Agreement in a timely, good and competent manner with requisite level of expertise
   b. To allow Client to inspect the Defender and the work being performed within reasonable notice
   c. To provide quarterly written reports to Client showing all work that has been performed.
   d. To respond to Client questions in a timely and professional manner;



Page1

       e.  Contractor warrants that Contractor is an expert at restoring Land Rover Defenders.

       f.  Contractor further warrants that it has requisite tools and access to suitable facilities to deliver excellent quality work product, and that its work herein does not create any liability to third parties or breach or financial burdens or conflicts.

3.    **Restoration**

Contractor will restore the Defender with either original parts and or those that meet or exceed industry standards for restoration. Restoration charges apply to "time and materials". Quality, comprehensive restorations of collectible automobiles take time, and diligence. Time spent on projects is documented by time clock. A list of parts and paint materials used within the billing cycle will be included on invoices. Certain sublet work may be marked up a flat rate of 10% to cover transportation and administrative costs; any markup will be disclosed to Client.

4.    **Liability for Taxes**

      *Client* covenants to hold *Contractor* harmless from any and all liability for withholding state or federal income tax, federal.

5.    **Duration of Agreement, Time of the Essence and**

      This Agreement shall continue from month to month until terminated as provided in this Agreement. Contractor estimates that, barring bone fide force majeure, the restoration project will be completed within 4-6 months as set out in Estimate dated February 20, 2015 and attached hereto as Exhibit A, and made a part hereof.  The time shall begin from the date initial invoice or first deposit is paid.

6.    **Failure to Deliver**

In the event that Contractor fails to deliver the project in a timely manner or fails to complete the restoration, and the delays are not justified or restoration is not satisfactory by industry standards and agreed to spec and or the vehicle is not road worthy, such delays or restoration flaws shall be deemed to be a material breach of this Agreement. In that instance, Contractor will be liable for liquidated damages of $2,000.00 as a penalty for each 30 days cycle that the delivery of the restoration project is delayed, and such delay is not acknowledged and excused in writing by the Customer.  In the event that the restoration is incomplete or flawed, Client will have the right to terminate the Agreement and seek damages.

7.    **Rights of Parties**

      Nothing contained in this Agreement shall be deemed to restrict *Client's* right to engage other persons or vendors, on such terms as *Client* and they may decide, nor to limit *Contractor's* right to enter into similar agreements with other parties, provided that the work to be performed under such other agreements shall not be performed in a manner that jeopardizes the quality or and timeliness of Contractor's work on the Defender.

8.    **Contractor's Independent Contractor Status**

      *Contractor* shall be considered an independent contractor and shall not be entitled to any employee benefits otherwise available to employees of *Client.*

9.    **Breach**
    In the event of breach of any of the terms or conditions of this Agreement, this Agreement may be terminated by the offended party on 5 days' written notice, and waiver of any breach of any provision shall not be deemed to be a waiver of any subsequent breach nor of the provision itself. Parties do not need to provide any notice to sue in connection with this Agreeement.

10.    **Termination of Agreement**
    This Agreement may be terminated by mutual agreement by either party on 10 days' written notice to the other party.

11.    **Manner of Termination**
    The party electing to terminate this Agreement shall tender to the other, at the time of giving notice of election to terminate, any balance owing to the other party. Failure to do this shall void any attempt to terminate, but election to terminate shall not affect the right of the party so electing to recover any sum due as of the date of termination.

12.    **No Waiver**
    The failure of either party to this Agreement to insist upon the performance of any of the terms and conditions of this Agreement, or the waiver of any breach of any of the terms and conditions of this Agreement, shall not be construed as subsequently waiving any such terms and conditions, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

13.    **Governing Law and Venue**
    This Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of California.  Any disputes arising out of this Agreement shall be brought in the courts in the County of Orange, State of California. Venue for all litigation relative to the formation, interpretation and performance of this Agreement shall be in Orange County, California.

14.    **Notices**
    Any notice provided for or concerning this Agreement shall be in writing and shall be deemed sufficiently given when sent by certified or registered mail if sent to the respective address of each party as set forth at the beginning of this Agreement.

16.    **Entire Agreement**
    This Agreement shall constitute the entire agreement between the parties and any prior understanding or representation of any kind preceding the date of this Agreement shall not be binding upon either party except to the extent incorporated in this Agreement.

17.    **Modification of Agreement**
    Any modification of this Agreement or additional obligation assumed by either party in connection with this Agreement shall be binding only if placed in writing and signed by each party or an authorized representative of each party.



Page3

**18.   Assignment of Rights**

The rights of Contractor under this Agreement are personal to that party and may not be assigned or transferred to any other person, firm, corporation, or other entity without the prior, express, consent of the Client. The rights of Client may be transferred at Client's discretion to any third party that holds title to the Defender or otherwise at Client's discretion.

19.   **Attorney Fees**

If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees, costs and necessary disbursements in addition to any other relief to which such party may be entitled, include, without limitation, all fees, costs and expenses of appeals interpret any of the terms of this Agreement.

This Agreement has been executed and delivered in the State of California, County of Orange, and the validity, enforceability and interpretation of any of the clauses of this Agreement shall be determined and governed by the laws of the State of California.

WITNESS our signatures as of the day and date first above stated.

Aaron Cuha, Customer Representative

Yuri Vanetik, Officer, Customer
Belmont Asset Solutions, LLC

February 20, 2015

Brian Hall and Michele Hall, Contractor
Defenders Northwest



# Estimate

140105BV3

915 26th Ave NW -  Suite C9
Gig Harbor, WA 98335
**T** 888-970-6409
**T** 602-790-3502
concierge@defendersnorthwest.com
www.defendersnorthwest.com

Attention: Aaron Cuha
Estimate Date: 2/20/2015
Est. Service Dates: 3/1/15 - 5/1/15

EST/INV #: 140722BV3
Project title: Cuha 130 ROLL
Project description: ROW LHD 130 Double Cab Rolling Chassis - 300Td
TERMS: Standard terms - Pre-pay on parts, labor billed monthly, 50% deposit retainer
NOTE: Chassis pre-paid, NTO 130 DC body owner supplied (new vs. rebuilt axle option)

| | Quantity | Unit Price | Cost |
|---|---|---|---|
| **Major Parts Groups** | | | |
| ASH300AUTO - Automatic Transmission Complete | 1 | $ 5,250.00 | $ 5,250.00 |
| Defender 130 Restoration Parts Kit - complete | 1 | $31,400.00 | $31,400.00 |
| Suspension System Complete (+2")- TF HD Springs, spring mounts, shock mounts, extended SS-brake flex lines | 1 | $ 1,238.45 | $ 1,238.45 |
| Hardware - SS, G 8.8 Structural, OEM | 1 | $    600.00 | $    600.00 |
| Additional Parts not included in original quote (will be discussed on an as needed basis balancing parts cost against restoration of existing items) | | Shipping | $    0.01 |
| | | Parts SUB | $38,488.46 |
| **Labor Estimate** | | | |
| Installation of Defender 130 Restoration Kit & above parts | 1 | $ 7,500.00 | $ 7,500.00 |
| | | Tax | $    0.00 |
| **TOTAL** | | | $45,988.46 |

Thank you for the opportunity to support you as the premier supplier of vintage ROW and
Legacy Land Rover Defender parts and restoration services in the Pacific Northwest.

- Restoration Kit to include all major body components as required, all engine restoration and driveline components as required, all LHD conversion components (excluding manual transmission) salisbury rear disc brake axle set, dash and operating control components as required, wheel and tyre set (base spec only)

- Automatic transmission conversion kit includes all components as required for mechanical and interior conversion to automatic transmission

Suspension System Components - TerraFirma

- TF018 & TF018 Medium Load Springs +2" lift
- TF123 & TF124 Big Bore Expedition Shocks +2"
- Extended Bumpstops - GAL146R & GAL147R (as req)
- Front Shock Turrets & HD Retainers - TF503 & TF502
- TF602L Stainless Steel Extended Brake Lines

Customer Initials: _AC_____  Date: _2-20-15_____          page 1 of 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# Exhibit 2

25
26
27
28

## Settlement Agreement and Mutual Release

This Settlement Agreement and Mutual Release ("Agreement") is made and entered into this ____ day of ____, 2022, by and between Yuri Vanetik, of the following known addresses; 8502 East Chapman Suite 609, Orange, CA 92869 ("Vanetik") and Defenders Northwest LLC of 915 26th Ave NW Suite C9, Gig Harbor, WA 98335 ("Defenders Northwest"), collectively, Vanetik and Defenders Northwest may be referred to herein as "Parties" and each may be referred to individually as a "Party."

WHEREAS, in 2013, Vanetik came to Defenders Northwest, along with an existing Defenders Northwest customer, Aaron Chua, for the purpose of build services for their Land Rover Defender, VIN #              9342 ("Land Rover Defender" or "Vehicle");

WHEREAS, in 2015, Vanetik represented he was the owner of the Land Rover Defender, but provided no evidence that he was the sole owner of the Land Rover Defender;

WHEREAS, from 2015 through 2019, Vanetik authorized Defenders Northwest to purchase certain parts and perform build services on the Land Rover Defender, including, but not limited to, sourcing an older TD5 2.5 ECU engine for the Vehicle;

WHEREAS, in 2021, the registration and insurance for the Land Rover Defender expired;

WHEREAS, without current insurance and registration, the Vehicle could not be road tested;

WHEREAS, Vanetik desires to take possession of the Vehicle; and

WHEREAS, the Parties desire to fully and finally release and settle any claims or counterclaims that currently exist or could have been asserted in any claim or lawsuit, as well as any other existing or potential claims between them.

NOW THEREFORE, in consideration of the payment, promises, and agreements set forth below, and other good and valuable consideration, the sufficiency and adequacy of which are hereby acknowledge, the Parties agree as follows:

1. **Party Acknowledgements.**
   a. Vanetik acknowledges and understands that due to the lack of current registration or active insurance, the Vehicle has not been road tested since December 31, 2021, including the final required road test period of 500 miles prior to final delivery;
   b. Defenders Northwest cannot recommend the Vehicle as road safe due to absence of any road test since December 31, 2021, including but not limited to the final road test period of 500 miles prior to final delivery;
   c. As of the date of this Agreement, the Vehicle is inoperable; and

SETTLEMENT AGREEMENT AND MUTUAL RELEASE – PAGE 1

    d. The Vehicle shall be released to Vanetik "AS IS, WHERE IS" without any warranty of work and without any obligation by Defenders Northwest to perform any further work on the Vehicle.

## 2. Payment and Consideration.

    a. Vanetik, either personally or through his Representative, shall present Defenders Northwest with evidence of current ownership of the Land Rover Defender.

    b. Vanetik, either personally or through his Representative, shall pay Defenders Northwest the total sum of TWENTY THOUSAND THIRTY AND 24/100 DOLLARS ($20,030.24) ("Outstanding Amount"); and

    c. Upon receipt of evidence of good and clear title of ownership for the Land Rover Defender and the Outstanding Amount, Defenders Northwest shall release the Land Rover Defender to Vanetik or Vanetik's designated carrier.

## 3. General Release.

    a. In consideration of the promises and undertakings in this Agreement, in particular the release of the Vehicle, Vanetik, on behalf of himself and his current, past or present, partners, managers, affiliates, subsidiaries, representatives, agents, attorneys, employees, predecessors, successors and assigns, hereby forever releases and discharges Defenders Northwest and their current, past or present, officers, directors, shareholders, partners, members, managers, affiliates, subsidiaries, parent companies, employees, agents, attorneys, predecessors, successors, and assigns from any and all claims, demands, indebtedness, agreements, promises, obligations, damages or liabilities, costs, expenses (including attorneys' fees or liens), and causes of action in law or in equity, of any kind, whether known or unknown, suspected or unsuspected, fixed or contingent, asserted or unasserted, arising or existing on or before the date of this Agreement, arising from, or related to, the repair, storage, and restoration of the Vehicle, including but not limited to, implementing bank or credit card chargebacks, past or future labor warranty, custom fabricated parts, aftermarket or genuine parts, and any future warranty claims of any kind, or disputes of any kind regarding past labor or parts related to the Vehicle.

    b. In consideration of the promises and undertakings in this Agreement, in particular payment of the Outstanding Amount, Defenders Northwest, on behalf of itself and its current, past or present, partners, managers, affiliates, subsidiaries, representatives, agents, attorneys, employees, predecessors, successors and assigns, hereby forever releases and discharges Vanetik and his current, past or present, officers, directors, shareholders, partners, members, managers, affiliates, subsidiaries, parent companies, employees, agents, attorneys, predecessors, successors, and assigns from any and all claims, demands, indebtedness, agreements, promises, obligations, damages or liabilities, costs, expenses (including attorneys' fees or liens), and causes of action in law or in equity, of any kind, whether known or unknown, suspected or unsuspected, fixed or contingent, asserted or unasserted, arising or existing on or before the date of this Agreement arising from, or related to, the repair, storage, and restoration of the Vehicle.

## 4. Indemnity. Vanetik agrees to indemnify and hold harmless Defenders Northwest and its affiliates and their directors, officers and employees from and against all losses, damages,

SETTLEMENT AGREEMENT AND MUTUAL RELEASE – PAGE 2

liabilities, costs and expenses, including any attorneys' fees and other legal expenses, arising, directly or indirectly, from, or in connection with, the ownership of the Vehicle or the evidence of title provided by Vanetik to procure the Vehicle from Defenders Northwest.

5. **No Admission.** Nothing in this Agreement shall be construed as an admission of guilt, liability, or responsibility on the part of any Party in connection with the matters set forth herein and all such liability is expressly denied.

6. **Representations and Warranties.**
    a. Each Party warrants and represents to the other that it has all requisite legal rights necessary to grant the release, covenants, and acknowledgements, and any other rights granted herein.
    b. Each individual who executes this Agreement on behalf of any Party represents and warrants that he does so with the knowledge and express approval and authorization of the Party on whose behalf that person executes this Agreement.
    c. Each individual who executes this Agreement on behalf of any Party represents and warrants that he does so with the knowledge and express approval and authorization of the Party on whose behalf that person executes this Agreement.
    d. Each Party represents and warrants that such Party is the sole and lawful owner of all right, title and interest in and to every claim or other matter which each such party purports to release herein, and that Party has the full power to enter into this Agreement and has not assigned, transferred or encumbered, or purported to assign, transfer or encumber, voluntarily or involuntarily, to any person or entity which is not a party to this Agreement, all or any portion of the claims, obligations or rights covered by this Agreement.
    e. The Parties acknowledge that they have had ample opportunity to consult with their attorneys prior to execution of this Agreement and have done so. They further acknowledge that they knowingly and voluntarily decided to sign and enter into this Agreement.
    f. No inference in favor of, or against, any Party shall be drawn from the fact that any such Party has drafted any portion of this Agreement.

7. **Full Satisfaction.** Without limiting in any manner the general release contained herein, Vanetik further expressly acknowledges and agrees that Defenders Northwest's undertakings stated herein represent full satisfaction of anything and everything Vanetik claims or could claim Defenders Northwest owes him and he shall not be entitled to any additional payment, services, warranty remedies, repairs, replacement parts, damages, or relief (monetary or otherwise), for anything arising from or related to the bailment, repair, restoration, storage, or delivery of the Vehicle.

8. **Governing Law.**
    a. This Agreement shall be interpreted in accordance with and governed by the laws of the State of Washington, without regard to the conflict of laws principles thereof.
    b. The state courts of Pierce County, Washington, shall have personal and subject matter jurisdiction over any action brought to enforce this Agreement.

9. **Entire Agreement.**

    a. This Agreement contains the entire understanding of the Parties with respect to the subject matter contained herein and supersedes any and all prior representations, agreements and understandings of the Parties, whether oral or written, related to such subject matter.

    b. No change, modification or waiver or any of the provisions of this Agreement will be binding, except through a writing signed by an authorized representative of each of the Parties.

## 10. Counterparts and Headings.

    a. This Agreement may be executed in two or more identical counterparts, all of which constitute one and the same Agreement. Electronically transmitted signatures on this Agreement are deemed to have the same force and effect as original signatures.

    b. The headings in this Agreement are for convenience and shall not expand, modify, limit, or define the text of this Agreement.

**11. Non Disparagement.** Neither Party shall engage in any vilification of the other, and each Party shall refrain from making any false, negative, critical or disparaging statements, implied or expressed, concerning the other, including but not limited to, any statements or actions that would damage the other's business reputation or good will.

**12. Confidentiality.** The Parties shall maintain the confidentiality of the terms of this Agreement, including the existence of the Agreement itself. Neither Party, or a Party's representative, is permitted to issue public statements about this Agreement or the contents herein.

This Agreement has been read and fully understood by the undersigned.

EXECUTED this _____ day of _____ , 2022.

                    DEFENDERS NORTHWEST LLC

_____      By_____
Yuri Vanetik                    Michele Hall, Member

                    By_____
                    Brian Hall, Member

STATE OF CALIFORNIA    )
                       ) ss
COUNTY OF ORANGE    )

I certify that I know or have satisfactory evidence that Yuri Vanetik is the person who appeared before me, and said person acknowledged that he signed this instrument, and on oath stated that said person is authorized to execute the instrument and acknowledged it to be his free and voluntary act for the uses and purposes mentioned in this instrument.

                                         SETTLEMENT AGREEMENT AND MUTUAL RELEASE – PAGE 4

WITNESS my hand and official seal hereto affixed this _____ day of _____, 2022.

_____
_____ [Print Name]
Notary Public in and for the State of California
Residing at _____
My Appointment Expires: _____

STATE OF WASHINGTON )
                     ) ss.
COUNTY OF PIERCE     )

I certify that I know or have satisfactory evidence that Michele Hall and Brian Hall are the persons who appeared before me, and that said persons acknowledged to me, as the Members of Defenders Northwest LLC, a Washington limited liability company, the limited liability company that executed the foregoing instrument and acknowledged the said instrument to be the free and voluntary act and deed of said limited liability company for the uses and purposes therein mentioned, and on oath stated that they are authorized to execute said insument.

WITNESS my hand and official seal hereto affixed this _____ day of _____, 2022.

_____
_____ [Print Name]
Notary Public, in and for the State of Washington
Residing at _____
My Appointment Expires: _____

SETTLEMENT AGREEMENT AND MUTUAL RELEASE – PAGE 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# Exhibit 3

25
26
27
28

# Defenders NW Schedule Updates

Inbox

Brian Hall <brian@defendersnw.com>

Aug 10, 2021, 3:58 PM

to

Good afternoon gentlemen,

I hope this finds all of you doing well and enjoying your summer days.

The shop schedule for the back half of the year has ben updated and I wanted to reach out to all of you with an overview, individual emails with clarification will follow depending on where your project falls in the queue.

Our large container shipment with the chassis, engines, and other oversize items is en-route and we are estimating a delivery time of 6-8 weeks from now as the CA port delays are holding up ocean traffic.

SHOP SCHEDULE:

Yuri:
August end will see delivery on the 130 to OC - carrier schedule requests have been sent and we are putting in the final items that were held off until ready to deliver (leather wheel, winch line, etc..)

Jeff:
First is Jeff's 110, the new 4.6V8 engine build is in process and will be installed while the paint shop is repairing and refinishing the panels. We will need final color confirmation before month end, and teardown is estimated to be complete in ~10 days. Once we have the panels apart we will have a parts list of the items needed prior to paint; if not in stock here we will add to our monthly air-freight. The last 4.6L V8 we did has been running around WA state and we had him back in the shop last month for an upgrade to a 1:2 transfer box and 24 spline disc brake rear axle to take advantage of the significant increase in HP - we will likely want to do the same on your project. The bodywork and paint portion of this job is driving the first half timeline, with the fitting and tuning of the new engine system being done as much as possible while waiting on the return of the repaired and painted body panels.

Robbie:
We are working on the rewire and panel repairs on the Tdi 110 - cleanup is in process and we are un-doing the incorrect work done by the prior shop. There are a few other minor issues we

may want to add to the project list as we move along with the project like door latching and window adjustments.  Depending on paint timing we are looking at end of Oct for completion.

Luke:
Tdi 130 project will see body panels pulled and sent to paint/body in Oct once they have space for us after completing the blue 110 panel job.  We will be starting on the new chassis and engine buildup (when the above tdi 110 is out) to have the rolling chassis prepped to match the timing of the arrival of the container shipment with the new engine, transmission, transfer box, and axles. Wiring, brake, and fuel systems will be installed while paintwork is being finished.  We will still need to finalize and order a few items (Seats, performance engine parts, lighting, winch, etc) but the core parts are on-hand or enroute in the current container shipment.

Chris:
D90 chassis enroute - eta above, you and Rick are set for chassis swap projects concurrently for mid/late Q4

Rick:
D110 Chassis enroute - eta above, you and Cates are set for chassis swap projects concurrently for mid/late Q4

We have cut-back on the in/out project bookings to focus on the above projects for the back half of the year and are limiting single day shop bookings to less then 2 per week with a maximum of 6 per montH. All new major projects are being scheduled for MID Q1 2022 at this time.

Our show/event schedule has us with minimal commitments outside the shop the back half of the year, 3 days for ABFM PDX Oregon over Labor Day weekend, 1-week for Overland Expo West middle of September, four-days for Overland Expo East in October, four-days for SEMA Nov 2-5, and pending confirmation 1-week out for the Baja 1000 in Ensenada Mex Nov 15-22.

Brian Hall

CEO - Defenders Northwest LLC

Defenders Northwest LLC
915 26th Ave NW, Suite C9
Gig Harbor, WA 98335 USA

Email - brian@defendersnw.com
Text & Cell - 602-790-3502

Brian Hall <brian@defendersnw.com>

Aug 30,
2021,
8:51 AM

to

Good morning all,

Just a quick month-end update for everyone:

Yuri - scheduled for delivery Wednesday afternoon pending replacement sensor parts air-freight
arrival

Jeff - project update email with images of repair/replace recommendations coming separately,
body is off the truck and we have a few additional repairs needed, but not much more than
expected.

Robbie - you move into the #2 space following the 130 delivery

Luke - you are due into the #3 space at the end of Sept. - we will need to review the project
specifications prior to disassembly on the body and with the new chassis, engine, and
transmission in the container we are expecting to commence rolling assembly in OCT while the
paint/body is being worked

For those with projects or parts in the container shipment:

Container has departed EU ports and is in the North Atlantic on the way to the first North
American port in Halifax before it turns south through the canal and back up the west
coast.  ETA has been revised from 10/1/21 t0 10/6/21 most likely due to weather in the
Southern portion of the Atlantic from Hurricane Ida.

Ship ID is the NYK METEOR and you can track the shipment HERE or you can track the vessel
online HERE

Brian Hall

CEO - Defenders Northwest LLC

Defenders Northwest LLC
915 26th Ave NW, Suite C9
Gig Harbor, WA 98335 USA

Email - brian@defendersnw.com
Text & Cell - 602-790-3502

On Aug 10, 2021, at 15:58, Brian Hall <brian@defendersnw.com> wrote:

Good afternoon gentlemen,

I hope this finds all of you doing well and enjoying your summer days.

The shop schedule for the back half of the year has ben updated and I wanted to reach out to all of you with an overview, individual emails with clarification will follow depending on where your project falls in the queue.

Our large container shipment with the chassis, engines, and other oversize items is en-route and we are estimating a delivery time of 6-8 weeks from now as the CA port delays are holding up ocean traffic.

SHOP SCHEDULE:

Yuri:
August end will see delivery on the 130 to OC - carrier schedule requests have been sent and we are putting in the final items that were held off until ready to deliver (leather wheel, winch line, etc..)

Jeff:

First is Jeff's 110, the new 4.6V8 engine build is in process and will be installed while the paint shop is repairing and refinishing the panels. We will need final color confirmation before month end, and teardown is estimated to be complete in ~10 days. Once we have the panels apart we will have a parts list of the items needed prior to paint; if not in stock here we will add to our monthly air-freight. The last 4.6L V8 we did has been running around WA state and we had him back in the shop last month for an upgrade to a 1:2 transfer box and 24 spline disc brake rear axle to take advantage of the significant increase in HP - we will likely want to do the same on your project. The bodywork and paint portion of this job is driving the first half timeline, with the fitting and tuning of the new engine system being done as much as possible while waiting on the return of the repaired and painted body panels.

Robbie:
We are working on the rewire and panel repairs on the Tdi 110 - cleanup is in process and we are un-doing the incorrect work done by the prior shop. There are a few other minor issues we may want to add to the project list as we move along with the project like door latching and window adjustments. Depending on paint timing we are looking at end of Oct for completion.

Luke:
Tdi 130 project will see body panels pulled and sent to paint/body in Oct once they have space for us after completing the blue 110 panel job. We will be starting on the new chassis and engine buildup (when the above tdi 110 is out) to have the rolling chassis prepped to match the timing of the arrival of the container shipment with the new engine, transmission, transfer box, and axles. Wiring, brake, and fuel systems will be installed while paintwork is being finished. We will still need to finalize and order a few items (Seats, performance engine parts, lighting, winch, etc) but the core parts are on-hand or enroute in the current container shipment.

Chris:
D90 chassis enroute - eta above, you and Rick are set for chassis swap projects concurrently for mid/late Q4

Rick:
D110 Chassis enroute - eta above, you and Cates are set for chassis swap projects concurrently for mid/late Q4


We have cut-back on the in/out project bookings to focus on the above projects for the back half of the year and are limiting single day shop bookings to less then 2 per week with a maximum of 6 per montH. All new major projects are being scheduled for MID Q1 2022 at this time.

Our show/event schedule has us with minimal commitments outside the shop the back half of the year, 3 days for ABFM PDX Oregon over Labor Day weekend, 1-week for Overland Expo West middle of September, four-days for Overland Expo East in October, four-days for SEMA Nov 2-5, and pending confirmation 1-week out for the Baja 1000 in Ensenada Mex Nov 15-22.

Brian Hall

CEO - Defenders Northwest LLC

Defenders Northwest LLC
915 26th Ave NW, Suite C9
Gig Harbor, WA 98335 USA

Email - brian@defendersnw.com
Text & Cell - 602-790-3502

Brian Hall <brian@defendersnw.com>

Nov 10,
2021,
9:12 PM

to DNWLLC

Hello all,

**At long last we have received an arrival notice for the (former on the boat) shipping
container order!!!!  SSEA arrival is scheduled for Nov 16th.**
Normal port times are 5-7 days for clearance and release, and then delivery scheduling can be
another 2-6 days (depending on where in the work-week the release happens)

We are hoping to have the container delivery by the 24th, but with the holiday we may not see it
until the following Monday.  Product to be shipped out common carrier will be turned within a
day after we unpack and check-in the entire contents of the shipment.  Local pickup items like
chassis will be available at teh same time.  Project work that has been on hold pending items
will get their goods assigned to pre-paid orders first, and those with open invoices will receive
updated invoice reminders reserving the goods for 7 days before we close-out the open invoices
and move the items to general stock.

If you have any questions please feel free to reach out to me directly as we are very much
looking to get into clearing up the backlog of project work that is a direct result of these shipping
delays.

Our large container shipment with the chassis, engines, and other oversize items is en-route and we are estimating a
delivery time of 6-8 weeks from now as the CA port delays and chassis shortage are still holding-up ocean traffic.

PARTS ORDERS

Charles, Scott, Bryan, Shirley, and Tyler:
Chassis, Engines, and the other special order items are all included in the inbound container shipment that finally left
last month, your items are in transit and we will notify you of the delivery confirmation as we get updates



Yuri Vanetik <yvanetik@gmail.com>

Feb 3,
2022,
10:56
AM

to Brian, bcc: me

Good morning. Hopefully, things are better. Second time around to be hit with theft /vandalism
is stressful for a small business.
Other than the back seats is there any other issue with the 130? What's the path to getting it
mechanically sound so that we can get it here back to CA?

Sent from my iPhone

63

**Alessandro Assanti <aassanti@assantilaw.com>**                    Aug 3,
                                                                      2022,
                                                                    8:44 AM

to michele, Vera, Nadia, brian, Brittney, Shawn, me, Yuri, yuri@vanetik.com

Hi Michele.

My apologies for getting to you now. I was travelling up to Northern California for a Jury trial that I start tomorrow morning. I am fully prepared to make the additional drive to come and inspect the vehicle if necessary. I hope I do not have to do that. We will have the transporter at the business location at 9am, regardless of whether the vehicle is ready or not. The general release is now a new thing. Brian had previously represented that there was a no run issue that remained, and this is after 8 years. I would have thought in that time frame Brian could have made the vehicle more complete than what it sounds like now that you are requesting a general release. That is rather insulting and frankly downright cruel. Why would you expect my client to release all his rights when it is your company that has fiddled with this project for 8 years and previously represented that the vehicle was ready but had a lingering no run issue. I would suspect that your company could narrow it down to electrical, mechanical... something.

Send me the release but if it waives all claims I will contact the police, show them that there is no money due by your very own admission and demand that the vehicle be returned to my client at 9am on the 8th.

Let me know today and if there are any more excuses and bs like this general release, I am going to file suit and you will be held accountable. Release the vehicle by the 8th, no strings attached.

Yours,
Alex
Alessandro G. Assanti, Esq.
**A. G. Assanti & Associates, PC**
IN BUSINESS SINCE 1995
9841 Irvine Center Dr, Suite 100, Irvine, CA 92618
telephone: (949) 540-0439 / facsimile: (949) 540-0458
email: aassanti@assantilaw.com
web: www.bike911.com; www.assantilaw.com

WARNING: **This communication is confidential and is protected by the Work Product Doctrine. This communication is intended only for the individual designated herein. This document is also covered by the Electronic Communication Privacy Act, USC Sections 2510 - 2521. If you are not the intended recipient, any dissemination, distribution or copying of this communication is strictly prohibited.**
DISCLOSURE: **Any and all communications, including but not limited to e-mail, fax, telephone, in-person conference(s) and/or review of documents between the law firm A.G. Assanti & Associates, P.C. and/or its representatives and recipient(s) does not constitute or establish an attorney-client relationship without a signed retainer agreement by attorney and recipient(s).**

Re: 130 delivery
Inbox



**Yuri Vanetik <yvanetik@gmail.com>**

to Defenders, Brian, Michele, Alessandro, bcc: yvanetik

Good morning, Brian.  I am following up re delivery date for June.  Have not been able to connect via te:
Yuri

Sent from my iPhone

> On Jan 26, 2022, at 8:45 PM, Yuri Vanetik <yvanetik@ymail.com> wrote:
>
> Hi Brian.  Can you elaborate re dates?
> I was under the impression we had everything and it was a matter of final checks and getting the vehic
>
> Sent from my  iPhone


**Brian Hall <brian@defendersnw.com>**

to me, Defenders, aassanti

Yuri,

Out for event/shows every weekend this month with limited service.  Sent text this morning, will follow up

The only open dates we have on this end are looking like last week of June/July 4th holiday as we are in

Brian




Brian Hall

CEO - Defenders Northwest

CEO - Autohome North America

Defenders Northwest LLC
915 26TH Ave NW, STE C9
Gig Harbor, WA 98335

AutoHome US
411 West Third St.
Carson City, NV 89703

Email - Brian@DefendersNW.com
Email - Brian@Autohomeus.com
Text & Cell - 602-790-3502


> On Jun 11, 2022, at 11:31, Yuri Vanetik <yvanetik@gmail.com> wrote:
>
> Good morning, Brian.  I am following up re delivery date for June.   Have not been able to connect via 1
> Yuri
>
> Sent from my iPhone
>
>> On Jan 26, 2022, at 8:45 PM, Yuri Vanetik <yvanetik@ymail.com> wrote:
>>
>> Hi Brian.  Can you elaborate re dates?
>> I was under the impression we had everything and it was a matter of final checks and getting the vehi
>>
>> Sent from my  iPhone


**Alessandro Assanti <aassanti@assantilaw.com>**

Aug 3,
2022,
8:44 AM

to michele, Vera, Nadia, brian, Brittney, Shawn, me, Yuri, yuri@vanetik.com


Hi Michele.

My apologies for getting to you now.  I was travelling up to Northern California for a Jury trial that I start tomorrow morning. I am fully prepared to make the additional drive to come and inspect the vehicle if necessary.  I hope I do not have to do that.  We will have the transporter at the business location at 9am, regardless of whether the vehicle is ready or not. The general release is now a new thing.  Brian had previously represented that there was a no run issue that remained, and this is after 8 years.  I would have thought in that time frame Brian could have made the vehicle more complete than what it sounds like now that you are requesting a general release.  That is rather insulting and frankly downright cruel.  Why would you expect my client to release all his rights when it is your company that has fiddled with this project for 8 years and previously represented that the vehicle was ready but had a lingering no run issue.  I would suspect that your company could narrow it down to electrical, mechanical... something.

Send me the release but if it waives all claims I will contact the police, show them that there is no money due by your very own admission and demand that the vehicle be returned to my client at 9am on the 8th.

Let me know today and if there are any more excuses and bs like this general release, I am going to file suit and you will be held accountable. Release the vehicle by the 8th, no strings attached.

Yours,
Alex
Alessandro G. Assanti, Esq.
**A. G. Assanti & Associates, PC**
**IN BUSINESS SINCE 1995**
9841 Irvine Center Dr, Suite 100, Irvine, CA 92618
telephone: (949) 540-0439 / facsimile: (949) 540-0458
email: aassanti@assantilaw.com
web: www.bike911.com; www.assantilaw.com

**WARNING:** **This communication is confidential and is protected by the Work Product Doctrine. This communication is intended only for the individual designated herein. This document is also covered by the Electronic Communication Privacy Act, USC Sections 2510 - 2521. If you are not the intended recipient, any dissemination, distribution or copying of this communication is strictly prohibited.**
**DISCLOSURE:** **Any and all communications, including but not limited to e-mail, fax, telephone, in-person conference(s) and/or review of documents between the law firm A.G. Assanti & Associates, P.C. and/or its representatives and recipient(s) does not constitute or establish an attorney-client relationship without a signed retainer agreement by attorney and recipient(s).**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# Exhibit 4

26
27
28

# STATE OF CALIFORNIA

## CERTIFICATE OF TITLE

VEHICLE HISTORY

C101701135H

**AUTOMOBILE**

| VEHICLE ID NUMBER | | | | VR MODEL | MAKE | PLATE NUMBER |
|---|---|---|---|---|---|---|
| | 9342 | UNLADEN | | | 1984 LNDR | 547 |
| BODY TYPE MODEL | AX | WEIGHT | FUEL | TRANSFER DATE | FEES PAID | EXPIRATION DATE |
| UT | | | D | 01/13/17 | $38 | 04/08/2014 |
| | YR 1ST SOLD | CLASS | *YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE |
| | AC | 2017 | YM | | | 01/13/17 |
| MOTORCYCLE ENGINE NUMBER | | | | | ODOMETER DATE | ODOMETER READING |

REGISTERED OWNER(S)

BELMONT ASSET SOLUTIONS INC
OR ULLERY CHAD DAVID
4025 E LA PALMA AVE
STE 202
ANAHEIM CA 92807

I certify (or declare) under penalty of perjury under the laws of the State of California that **THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.**

1a. _____ X _____
   DATE                SIGNATURE OF REGISTERED OWNER

1b. _____ X _____
   DATE                SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads [  |  |  |  |  |  ] (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

**WARNING** ☐ Odometer reading is not the actual mileage. ☐ Mileage exceeds the odometer mechanical limits.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| DATE | TRANSFEROR/SELLER SIGNATURE | DATE | TRANSFEREE/BUYER SIGNATURE(S) |
|---|---|---|---|
| | X | | X |
| PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY | | PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY | |

### IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

2. X _____
   Signature releases interest in vehicle. (Company names must be countersigned)

   Release Date _____

   CA170957720

   010433

REG. 17.30RS (REV. 02/2016)

**KEEP IN A SAFE PLACE - VOID IF ALTERED**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# Exhibit 5

25
26
27
28



Good afternoon Mr. Assanti,

This firm represents Defenders NW and has been asked to respond to your email of August 3.

Without proof of the actual owner of the vehicle and authority from that person or entity to release the vehicle, Defenders NW will not be releasing it to anyone on Monday, August 8th. To date, Defenders NW is aware of at least <u>four</u> potential owners of the vehicle. When the project started in 2013, it involved Yuri Vanetik and an existing customer of Defenders NW, Aaron Chua. Apparently, that partnership ended at some point and Mr. Vanetik continued (albeit sporadically) to request that Defenders NW repair the vehicle. It is unclear, though, whether Mr. Vanetik, Mr. Chua or an entity owned by those gentlemen actually owned the vehicle. Your recent correspondence with Defenders NW references yet another party by the name of Presidio as well as "affiliated entities" of Mr. Vanetik. Defenders NW has no knowledge of an individual or entity by the name of Presidio, nor is it aware of any "affiliated entities" involved with the vehicle. Notably, despite their repeated requests for current registration and insurance for the vehicle, you and your client have failed to provide such information. Accordingly, Defenders NW is not willing to take the risk that the vehicle is being released to the wrong party and, in turn, face any associated liability for doing so.

There also remains due and owing to Defenders NW approximately $20,000 for work performed on the vehicle, approximately $5,000 of which dates back to February 2020 and has accrued nearly $20,000 in interest. These amounts do not take into account the many years that Defenders NW stored the vehicle (amounting to $25,000 in storage charges). That being the case, Defenders NW will be notifying all known and interested parties that a chattel lien is being filed on the vehicle. Defenders NW will not release the lien or the vehicle until such amounts are paid in full.

Once the ownership and outstanding invoices are resolved, Defenders NW will be happy to discuss with the owner of the vehicle next steps in resolving the recent no-start issue.
Thank you, Shawn
Shawn K. Harju
**Chrysalis Solutions PLLC**
shawn@chrysalissolutionspllc.com
(253) 335-9199 cell
(253) 517-3622 office

Physical Address: 909 S. 336th Street, Suite 102, Federal Way, WA 98003
Mailing Address: 1911 SW Campus Drive, #286, Federal Way, WA 98023

"Transform Your Business, Transform Your Life."

www.chrysalissolutionspllc.com

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 1275 N. Berkeley Ave<br>MAILING ADDRESS: 1275 N. Berkeley Ave<br>CITY AND ZIP CODE: Fullerton 92838<br>BRANCH NAME: North Justice Center | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ORANGE |
| PLANTIFF: Belmont Asset Solutions, LLC et.al. | **Jul 27, 2024** |
| DEFENDANT: Shawn K. Harju et.al. | Clerk of the Superior Court<br>By: S. BERRY, Deputy |
| Short Title: BELMONT ASSET SOLUTIONS, LLC VS. HARJU | |

| NOTICE OF HEARING<br>CASE MANAGEMENT CONFERENCE | CASE NUMBER:<br>30-2024-01414656-CU-BC-NJC |
|---|---|

Please take notice that a(n), <u>Case Management Conference</u> has been scheduled for hearing on <u>12/24/2024</u> at <u>09:00:00 AM</u> in Department <u>N16</u> of this court, located at <u>North Justice Center</u>.

**Plaintiff(s)/Petitioner(s) to provide notice to all defendant(s)/respondent(s). Parties who file pleadings that add new parties to the proceeding must provide notice of the Case Management Conference to the newly added parties.**

**IMPORTANT:** Prior to your hearing date, please check the Court's website for the most current instructions regarding how to appear for your hearing and access services that are available to answer your questions.
Civil Matters - https://www.occourts.org/media-relations/civil.html
Probate Mental Health - https://www.occourts.org/media-relations/probate-mental-health.html
Appellate Division - https://www.occourts.org/media-relations/appeals-records.html

**IMPORTANTE:** Antes de la fecha de su audiencia, visite el sitio web de la Corte para saber cuáles son las instrucciones más actuales para participar en la audiencia y tener acceso a los servicios disponibles para responder a sus preguntas.
Casos Civiles - https://www.occourts.org/media-relations/civil.html
Casos de Probate y Salud Mental - https://www.occourts.org/media-relations/probate-mental-health.html
División de apelaciones - https://www.occourts.org/media-relations/appeals-records.html

**QUAN TRỌNG:** Trước ngày phiên tòa của quý vị, vui lòng kiểm tra trang mạng của tòa án để biết những hướng dẫn mới nhất về cách ra hầu phiên tòa của quý vị và tiếp cận những dịch vụ hiện có để giải đáp những thắc mắc của quý vị.
Vấn Đề Dân Sự - https://www.occourts.org/media-relations/civil.html
Thủ Tục Di Chúc Sức Khỏe Tinh Thần - https://www.occourts.org/media-relations/probate-mental-health.html
Ban phúc thẩm - https://www.occourts.org/media-relations/appeals-records.html

Clerk of the Court,  By: _S. Berry_____ , Deputy

**NOTICE OF HEARING**    Page: 1

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**

North Justice Center
1275 N. Berkeley Ave
Fullerton  92838

**SHORT TITLE:** BELMONT ASSET SOLUTIONS, LLC VS. HARJU

| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | CASE NUMBER:<br>**30-2024-01414656-CU-BC-NJC** |
| --- | --- |

I certify that I am not a party to this cause. I certify that a true copy of the above Notice of Hearing has been placed for collection and mailing so as to cause it to be mailed in a sealed envelope with postage fully prepaid pursuant to standard court practices and addressed as indicated below. The certification occurred at Fullerton , California, on 07/27/2024. Following standard court practice the mailing will occur at Sacramento, California on 07/29/2024.

Clerk of the Court, by: _S. Berry_ _____ , Deputy

A.G. ASSANTI & ASSOCIATES, P.C.
9841 IRVINE CENTER DRIVE # 100
IRVINE, CA 92618

ETEMADI LEGAL GROUP PC
137 PINEVIEW
IRVINE, CA 92620

---

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

Page: 2

Electronically Filed by Superior Court of California, County of Orange, 07/29/2024 08:00:00 AM.
30-2024-01414656-CU-BC-NJC - ROA # 8 - DAVID H. YAMASAKI, Clerk of the Court By A. Burton, Deputy Clerk.

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | | FOR COURT USE ONLY |
|---|---|---|
| Alexandru Assouad, SBN 193364     Donna Etemadi, SBN 354953 | | |
| A.G. ASSANTE & ASSOCIATES, P.C.    Etemadi Legal Group PC | | |
| 5841 Irvine Center Dr, Suite 110     15" Provence | | |
| Irvine, CA 92618         Irvine, CA 92628 | | |
| TELEPHONE NO.: (223)488-0616      FAX NO.: | | |
| EMAIL ADDRESS: donna@elglaw.co | | |
| ATTORNEY FOR *(Name):*   Belmont Asset Solutions, LLC; Chad Ulery | | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: 700 Civic Center Drive West
CITY AND ZIP CODE: Santa Ana 92701
BRANCH NAME: Central Justice Center

CASE NAME:
Belmont Asset Solutions, LLC v. Shawn Harju et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited    [ ] Limited | [ ] Counter   [ ] Joinder | 30-2024-01414656-CU-BC-NJC |
| (Amount demanded exceeds $35,000)   (Amount demanded is $35,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: |
| | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [X] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary   b. [X] nonmonetary; declaratory or injunctive relief   c. [X] punitive
4. Number of causes of action *(specify):* 18
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 07/22/2024

Donna Etemadi
(TYPE OR PRINT NAME)

▸ *Donna Etemadi*
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courts.ca.gov*